## No. 2370.

## STOUT, GOLDSBOROUGH & PERRY *v.* THE ENNIS NATIONAL BANK.

1. USURIOUS INTEREST.—When partial payment is made to a national bank under a contract to pay usurious interest, in the absence of a stipulation as to how the payment shall be appropriated, the law will apply it in liquidation of that portion of the contract which is legal, and the bank may afterwards avoid the penalty fixed by act of Congress for collecting usurious interest by relinquishing claim for it. If, however, a partial payment on the debt is, by agreement between the bank and the debtor, appropriated to the payment of usurious interest, the *locus penitentiæ* can not exist, since the offense has been consummated and the right to recover the penalty is fixed.

2. PARTNERSHIP.—A partner may bind his firm by the release of a debt due the partnership of which he is a member, if the debtor has neither knowledge nor notice that the partner is acting in violation of his obligation and duties to the firm, or for purposes disapproved of by the firm, or in fraud of its rights.

3. RELEASE—PARTNERS—USURIOUS INTEREST—NATIONAL BANKS.—A settlement and release executed by a member of a copartnership to a national bank which had collected usurious interest from the firm, recited: "We (the firm) do renounce and declare to be fully satisfied any and all rights, rights of action, claim, or demand, that we may have or be entitled to under any law of the United States, to recover any sum of money from said Ennis National Bank, by reason of us having paid heretofore to said bank any interest at a greater rate than twelve per cent per annum," *held:*

(1) The release, though it may have been made with fraudulent intent as to the other partners, was binding on the firm when accepted by the bank in ignorance of such fraudulent intent.

(2) Farnival v. Weston, 7 Moore, 356, and **Arton v. Booth,** 4 Moore, 171, cited.

(3) The mere fact that a partner has executed a release without the consent, or even against the opposition of his copartners, and that this is known to the party who accepts the release, will not of itself justify the conclusion that the release was fraudulent.

APPEAL from Ellis. Tried below before the Hon. Anson Rainey.

*B. M. Templeton,* for appellants: That the agreement of October 16, 1886, did not purge the transaction of usury, cited Tyler on Usury, 396, and the authorities cited; James Jackson v. Ann L. Cassidy, appealed from Travis county, decided in Supreme Court at Austin, spring term, 1887.

That the court erred in not finding that the settlement made by Goldsborough with the bank and the release executed by him, was all done with intent to defraud Stout and Perry and for the purpose of defeating them in their rights, he cited Lindley on Partnership, page 381, section 277; Id., section 294.

*Edwards & Fears* and *Crawford & Crawford,* for appellee: That appellants had no cause of action when the settlement was made; but if they did, the release is still valid and binding on the firm, they cited 1 Lindley on Partnership, 293; Parsons on Partnership, 353 and note.

That before a borrower can recover from a national bank twice the amount of usurious interest paid upon a loan or dis-

25

count he must have paid the debt with the usury, they cited Bletz v. Columbia National Bank, 30 American Reports, 348; Tyler on Usury, 422; First National Bank v. Childs, 39 American Reports, 476; Knapp v. National Bank, 15 Federal Reporter, 335; Higley v. First National Bank, 20 American Reports, 761; 20 Johnson, 290.

That from the origin of the loan, from the retaining of the first discount through all the renewals up to the time of final payment of the principal, there was a *locus penitentiæ* for the party taking the excessive interest, they cited Duncan v. National Bank, Thompson's National Bank cases, 360; Higley v. National Bank, 26 Ohio State, 75; same case, 20 American Reports, 761; Brown v. National Bank, 72 Pennsylvania State, 209.

That no part of usurious interest paid can be recovered if it would leave any part of the principal debt unpaid, they cited Hawkins v. Welch, 8 Missouri, 490; Stevens v. Lincoln, 7 Met., Massachusetts, 528; Sanders v. Lambert, 7 Gray, Massachusetts, 484.

STAYTON, ASSOCIATE JUSTICE. The appellants, Stout, Goldsborough and Perry, bring this suit as partners to recover from the Ennis National Bank a penalty based on a claim that they paid to the bank usurious interest.

The action is brought under an act of Congress prescribing the rate of interest which national banks may charge, and giving penalties against them for taking, receiving or charging interest greater than the law permits. Under that act, such banks may, in this State, take, receive or charge interest not greater than twelve per cent per annum. So much of the act as provides penalties is as follows:

"The taking, receiving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidences of debt carries with it, or which have been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same, provided such action is commenced within two years from the time the usurious transaction occurred."

The cause was tried without a jury, and so much of the find-

ings of fact as bear upon the question whether the acts of the bank were such as entitled the appellants to the penalty of twice the amount of interest paid are as follows:

1. On July 6, 1883, Stout, Goldsborough & Perry executed their note for ten thousand dollars, payable to the Ennis National Bank ten months after date, with interest at the rate of twelve per cent per annum after maturity. The bank loaned plaintiffs eight thousand seven hundred and fifty dollars, and took this note at the rate of fifteen per cent per annum, and the amount of the note, less the discount, one thousand two hundred and fifty dollars, to wit, eight thousand seven hundred and fifty dollars, was placed to the credit of Stout, Goldsborough & Perry on the books of the bank, and was by them drawn out in a few days and used in their partnership business.

2. Nothing was ever paid on this note, and on April 29, 1884, it was renewed by the plaintiffs executing to J. Baldridge a note for ten thousand dollars, due twelve months after date, with interest at the rate of twelve per cent per annum from maturity. Baldridge immediately endorsed the note and delivered it to the bank. Baldridge was president of the bank, and the reason the note was made payable to him was because he doubted the power of the bank to take mortgages upon personal property to secure loans made. Upon this last note interest was charged at fifteen per cent per annum, and for the interest plaintiffs executed their note, due at ninety days, for one thousand five hundred and forty-five dollars; the forty-five dollars being the interest on the one thousand five hundred dollars for the ninety days which the note had to run.

3. On this note for one thousand five hundred and forty-five dollars, given for the interest on the ten thousand dollar note last mentioned plaintiffs made payments as follows: January 10, 1885, nine hundred and twenty-one dollars and twenty cents; April 24, 1885, sixty-four dollars and sixty cents; June 27, 1885, two hundred and forty-three dollars and five cents—total payments, one thousand two hundred and twenty-eight dollars and fifty cents.

4. On June 27, the ten thousand dollar note last above mentioned was extended to May 1, 1886, by an endorsement on the back of the note and the interest marked paid to May 1, 1886.

5. The interest was not paid in money, but by a note dated June 27, 1885, due August 1, 1885, for two thousand and sixty-five dollars and thirty cents (which includes balance on note for

one thousand five hundred and forty-five dollars), and upon this note was paid the sum of two thousand dollars on March 3, 1886.

The evidence leaves no doubt that the notes referred to in the third and fifth findings were given for interest charged at the rate of fifteen per cent, and that the payments thereon credited were made by the appellants and received by the appellee as interest.

The appellee denies that these facts fixed its liability to pay the appellants double the amount of the interest paid; and it further insists, if such a liability existed, that this ceased by reason of certain matters which occurred on October 14, 1886, which are thus stated in the findings of fact:

6. On October 14, 1886, Stout, Goldsborough & Perry had a settlement with the bank, of all matters between them growing out of the original loan to plaintiffs on July 6, 1883. From the date of the original loan to the date of the settlement was three years, three months and eight days. In the settlement the accounts were completely restated and interest calculated upon the sum actually received by the plaintiffs on July 6, 1883, to wit: Eight thousand seven hundred and fifty dollars at twelve per cent interest from the date of the loan to October 14, 1886, and interest was computed upon the several payments hereinbefore mentioned, at the same rate, and were deducted from the principal sum loaned, and left a balance due the bank of eight thousand four hundred and twenty-four dollars and forty cents, plaintiffs executed their note to the bank, due January 15, 1887, and upon the execution of this last mentioned note the bank surrendered to the plaintiffs all the notes given for the principal, as well as the interest upon said loan. The amount of the notes given for the interest, which were then surrendered, amounted to something more than two thousand dollars.

7. By the terms of said compromise and settlement, the plaintiffs renounce and relinquish all claims and demands against the bank for taking on said loan interest at a rate greater than twelve per cent, and acknowledged full satisfaction of the same, the consideration for which was the extension of time granted to the plaintiffs for the payment of said loan.

8. This settlement was made by Goldsborough in the name of the firm of Stout, Goldsborough & Perry. Neither Stout nor

Perry were present when the settlement was made, nor did they know of said settlement until some time afterwards.

9.   December 20, 1886, Stout, Goldsborough & Perry paid to the bank the sum of two thousand dollars, which was credited on the note for eight thousand four hundred and twenty-four dollars and forty cents.   When this payment was made, both Goldsborough and Perry were present but nothing was said how the payment should be applied.

Nothing more has ever been paid on the note mentioned in the ninth finding.

The first two notes were secured by mortgages on cattle, and the last by mortgage on the same cattle and their increase.

The court further found that, prior to October 14, 1886, Stout and Perry had determined between themselves not to renew the note dated April 29, 1884, for ten thousand dollars, but that of this the bank had no notice.

There was evidence, however, tending to show that the president of the bank had reason to believe that Stout and Perry did not intend to pay the usurious interest, or that they intended to assert the claim in this case insisted upon; and it further tended to show that Goldsborough was advised of this intention.

The court further found that by the settlement of October 14, 1886, the transaction was purged of all usury, and that such was the purpose of the parties.   As conclusions of law the court found as follows:

1.   That the original contract between plaintiffs and defendant was usurious.

2.   That by the settlement made on October 4, 1886, in which the new note for eight thousand four hundred and twenty-four dollars and forty cents was given, the contract was purged of usury, and the plaintiffs are thereby precluded from recovering the penalty sued for.

3.   That the partnership of Stout, Goldsborough & Perry existed at the time of said settlement, and Goldsborough, as one of the firm, was authorized to make such settlement, and the same is binding upon the firm.   Judgment is therefore rendered for the defendants.

The appellee insists that the right to the penalty could not attach until the entire debt was paid, and that until this occurred it had the power and right to abandon its claim for the usurious interest, and thus defeat the appellants' right to the penalty.

There is no doubt that there are decisions so holding, in cases in which the contracts were usurious; but those are cases in which money was paid on such contracts without an appropriation by the parties of the payment to the usurious interest, and in such cases the law would appropriate the payment to that part of the demand which was legal, for neither the party making or receiving the payment would be presumed to have intended that it should be appropriated to the payment of usurious interest.

The rule is thus well stated by the Supreme Court of Massachusetts in the case of Stevens v. Lincoln, 7 Metcalf, 528: " While the usurious interest is unpaid there remains the *locus penitentiæ;* that party may relinquish it and recover for the balance of his debt, the contract not being rendered void by the statute.   And in the absence of proof as to any appropriation of a partial payment, the law will apply a payment to a valid demand rather than to the illegal one; and the balance which remains unpaid, if it exceed the usury agreed to be paid, includes the usury, so that on the one side the debtor shall not recover back any part of that which he honestly owed, by the allegation on his part that the payment made by him was the payment of his usury; nor on the other hand will the law permit the creditor to secure to himself the avails of his illegal contract, when he sues for the balance due on the contract, to aver that the usurious interest was contained in the previous payment, and that the residue is justly due."

When, however, the parties, as they did in this case, appropriate, and intend to appropriate, the payment to usurious interest, the *locus penitentiæ* can no longer exist; for the offense has been consummated—"the greater rate of interest has been paid," and the right to the penalty fixed.   The interest contracted for being usurious, the act of Congress declared it all forfeited, and there was no legal claim for interest on which the payments could have been appropriated.   The right to the penalty attached, and was measured by the payments of interest made before the settlement made on October 14, 1886.

The remaining question is:  Did that settlement and the release executed by Goldsborough release the appellee from liability for the penalty?  After reciting that it was made in consideration of the extension of time given by the note of date October 14, 1886, and other considerations, that instrument declared that:

"We do renounce and declare to be fully satisfied, any and all rights, rights of action, claim or demand that we may have or be entitled to under any law of the United States, to recover any sum of money from said Ennis National Bank by reason of us having paid heretofore to said bank any interest at a greater rate than twelve per cent per annum.

"This, the fourteenth day of October, 1886.

(Signed)                "STOUT, GOLDSBOROUGH & PERRY."

It is claimed that the partnership was dissolved at the time Goldsborough executed that instrument, and that for this reason he had no power to execute it. The court found that the partnership had not been dissolved, and so upon evidence that justified the finding. Stout, Goldsborough & Perry brought this action, and in their petition allege "that plaintiffs *are, and have been since the spring of 1883, a firm,* under the firm name of Stout, Goldsborough & Perry," and in this right throughout they prosecute."

The case, then, is one in which a partner for and in the name of his firm executed a release, and it is unnecessary to inquire what would have been Goldsborough's power had he executed the release after the firm was dissolved. The consideration on which the release was executed was sufficient. That one partner has power to release a debt or claim due to the partnership of which he is a member is well settled. (Lindley on Partnership, 278, 293; Story on Partnership, 115, 252; Collyer on Partnership, 468, 636; Parsons on Partnership, 325.)

The adjustment or settlement of any claim held by or against the partnership was within the power of any member of the firm, and the action of Goldsborough in its exercise must be held binding on the plaintiff unless his act was fraudulent and so known to be by the appellee at the time the settlement was made.

"Every contract in the name of a firm, in order to bind the partnership, must not only be within the scope of the business of the partnership, but it must be made with a party, who has no knowledge or notice, that the partner is acting in violation of his obligation and duties to the firm, or for purposes disapproved of or in fraud of the firm." (Story on Partnership, 128; Bigelow on Fraud, 372.)

Although, as before said, there was some evidence tending to show that Stout and Perry were not willing that a settlement

should be made through which the penalty claimed in this case should be released, and tending also to show that the president of the bank may have known of their indisposition to make such a settlement, yet there was evidence tending to a contrary conclusion on both these points; and so standing the evidence, the court, in effect, found that the bank had no notice of the wish of Stout and Perry.

On this finding, if it be conceded that the act of Goldsborough was fraudulent as to his partners, it must be held that his act, done within the scope of his powers, is binding on the firm of which he was a member. (3 Kent, 48.) It is shown that appellants transacted much business with the bank, other than that out of which grows this litigation, and this was mainly done through Goldsborough, who from time to time signed the firm name, as he had the right to do, to all necessary papers. It is claimed, however, that the finding of the court is not sustained by the evidence, and that the act of Goldsborough was fraudulent and known to be so by the president of the bank, and we will therefore consider the power of Goldsborough and the right of the bank under the most favorable circumstances that can be placed on the facts for the appellants.

Releases executed by one partner have been sustained in many cases under circumstances which would more clearly show a disregard for the rights of the firm than do those attending the execution of the release signed by Goldsborough. In the case of Farnival v. Weston, 7 Moore, 356, it appeared that partners had instituted an action for libel in which they instructed their attorney to proceed to trial, but a few days before the trial one of the partners executed a release to the defendant, which seems to have been done without the consent of the other partners or the attorney, who had paid the greater part of the costs, and it was claimed that the release was a fraud on the other partners as well as the attorney. The court, however, held the release valid, and refused to impute fraud, from the fact that the release was executed by one partner without the consent of the other. The instruction of both partners to the attorney to prosecute the action to judgment clearly indicated the wish of the partner who did not execute the release that the claim should be enforced.

In the case of Arton v. Booth, 4 Moore, 171, a release of a partnership debt was executed by one partner, after dissolution, without the consent of the other, and it appeared that the debtor

had notice that the partner who did not execute the release was entitled to the money. due. This release was executed pending a suit brought in the name of both partners, and the court refused to set aside the release, or to hold that the facts showed such fraud as would be sufficient to invalidate it. In that case the debt was paid to the partner not entitled to it. The court said : "There seems to have been neither fraud nor collusion between Dawson (the partner executing the release) and the defendant, nor is there any reason to say that any fraud existed between Dawson and his partner, though his giving the release might be improper, still it is not fraudulent."

From these and like cases, it seems that the mere fact that one partner has executed a release without the consent or even in opposition to the wish of another partner, is not sufficient, even if this be known to the creditor released, to justify a holding that the release was fraudulent on the part of the partner or creditor, and that other proof must be made showing that the partner was not acting in good faith towards his firm in executing the release and the creditor not so acting in receiving it.

Goldsborough was not acting in violation of his obligation and duties to his copartners if he believed, in view of all the facts, that the course pursued by him was for the best interest of the firm, although by his act he surrendered a legal right while complying with a strong moral obligation resting upon him and his copartners alike by reason of a contract they had all entered into, as well as by the further fact that they had received and were using the money of the bank.

It would be difficult to predicate a charge of fraud upon an act done in the discharge of a moral obligation such as rested upon the appellants. To render the act of one partner invalid because it may accomplish a purpose disapproved of by the firm, it would seem that the purpose so disapproved should be one that the firm is under neither a legal nor moral obligation to accomplish. Two members of a firm composed of three might disapprove of the purpose of a third to pay a just debt of the firm, but this would not make the payment by him invalid, or subject him to any liability to the unwilling partners; for the firm would be under a legal as well as moral obligation to pay it, and notice of the unwillingness of all the other members of the firm would not affect the creditor's right.

If during the existence of a partnership a debt owed by it should become barred by the statutes of limitation, no one

would doubt that the act of one partner in reviving it by a new promise would bind the firm, and power to pay such a debt stands on the same ground as does his right and power to revive it when barred.

If one partner, in a firm composed of three or more members, should do either of these acts in opposition to the will of the others, even if such opposition was known to the creditor at the time the new promise or payment was made, we apprehend that the promise or payment would bind the firm, and so, for the reason that the one partner had given effect to the moral obligation of the firm to pay the debt which could not have been enforced but for this act. A new promise to pay such a debt, or an acknowledgement of its justice such as will relieve it from the bar of the statute, is as much a release of a legal right as was the release executed by Goldsborough. Whether such an act, done by one partner in opposition to an expressed wish of others, would raise rights as between themselves, we need not inquire.

The law encourages the discharge of a mere moral obligation, and the act through which this is done can not be fraudulent as to one or more who are burdened with it. Goldsborough may have believed that the extension of time given by the settlement, and the moral effect of the firm's recognition of and payment of the debt due to the bank, with legal interest on it, would be of greater pecuniary advantage to the firm than the penalty which they now seek to enforce; or he may have deemed the legal questions involved of such doubt as to render it to the interest of the firm to make the settlement made, and to release the claim for the penalty.

Having executed the release upon valuable consideration, and the appellee having no knowledge of any fraudulent intent on the part of Goldsborough, the appellants must be held bound by it, even if it had appeared that Goldsborough executed it with a fraudulent intent. The difficulty which would attend the maintenance of this action by the firm of which Goldsborough is a member, when the release, as to him, would at all events be binding, we have not deemed it necessary to consider. (Parsons on Partnership, 353.)

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Opinion delivered December 9, 1887.