# FIFTH DISTRICT, 1897.

Huey & Philp v. Charlie Fish, Trustee.

Delivered February 6, 1897.

**1. Partnership—Non-Trading Firm.**
A firm engaged in plumbing and in carrying out plumbing contracts, keeping on hand plumbing supplies for its own use, only selling to other plumbers occasionally for accommodation, and buying from other plumbers when out of certain articles, is a non-trading firm.

**2. Same—Power of One Partner to Mortgage.**
One partner of a non-trading firm has not the power, where his co-partner is acting in the business and present or accessible, to mortgage all of the partnership assets, contrary to such co-partner's wishes, or in fraud of his rights or those of non-preferred creditors and in such manner (with right of immediate possession in the trustee) as to practically end the partnership business.

Appeal from Dallas. Tried below before Hon. Edward Gray.

*McCormick & Spence*, for appellants.—1. One partner, by virtue of his relation with the other partners, is clothed with a qualified agency for all, and whatever right the partner has to bind the other members of the firm, grows out of this relation of agency. Generally speaking, one partner has the implied power by himself to do such acts and make such contracts as will further the business of the firm, but he has no power, acting alone, to do such acts or make such contracts as will necessarily result in the termination of the partnership business. Hunter v. Waynick, 67 Iowa, 555; Loeb v. Tuttle, 12 N. W. Rep., 544; Henderson v. Nichols, 67 Cal., 152; Shellito v. Sampson, 61 Iowa, 40; Osborne v. Barge, 29 Fed. Rep., 725.

2. The powers of a partner in a non-trading partnership are more limited than those vested in a partner in a trading partnership, and even if it should be held that one partner, without the assent of the others, could dispose of all the assets of a trading partnership or firm, yet, under the law, no such power is vested in a partner in a non-trading firm, and the court erred in failing to submit to the jury the issue as to

the character of the partnership of Bulgin & Co.   Randall v. Meredith, 76 Texas, 669; Sloan v. Moore, 37 Pa. St., 217; Blaker v. Sands, 29 Kan., 551; Snively v. Matheson, 40 Pac. Rep., 628; Henderson v. Nichols, 67 Cal., 152; Drake v. Thyng, 37 Ark., 228; Myers v. Moulton, 12 Pac. Rep., 505; Clayton v. Hardy, 27 Mo., 536; Bates on Partnership, secs. 403-404; Hewitt v. Sturdevant, 4 B. Mon., 453.

W. J. J. Smith and Oeland & Littleton, for appellee.—1.   Each partner is considered generally as the agent of the firm in all matters pertaining to its business, and as such may bind the other partners the same as if he acted under a duly executed power of attorney for that purpose.   One partner has the authority, and may sell the whole or any part of the assets of the firm in the regular course of business, or for the purpose of paying the debts for the firm, where there is no fraud in the sale.   Schneider v. Sansom, 62 Texas, 201; McKinney v. Bradberry, Dallam, 441; Blodgett v. Weed, 119 Mass., 215; Decker v. Howell, 42 Cal., 636; Campbell v. Dent, 54 Mo., 325; Graser v. Stellwagen, 25 N. Y., 315; Williams v. Barnett, 10 Kan., 455; Halstead v. Sheppard, 23 Ala., 558; Cayton v. Hardie, 27 Mo., 536; Lamb v. Durant, 12 Mass., 64.

2.   One partner has the power to mortgage the firm property or to sell it for the payment of the partnership debt.   He can also transfer it directly to a partnership creditor in discharge of the obligation.   One partner cannot, without the authority or consent of his co-partner, make a general assignment, unless the one making such an assignment has the entire management of the business, or unless the other is absent so as to be beyond the reach of prompt communication.   This rule, however, does not obtain with reference to the power of the partner to execute a mortgage upon the firm property, or to sell it for the payment of a partnership debt.   Johnson v. Robinson, 68 Texas, 402; Kellar v. Self, 5 Texas Civ. App., 393; Groves v. Hall, 32 Texas, 665; Burrill on Assign., 130; 1 Lindsey on Partnership, 139; Jones on Chat. Mortg., sec. 46; 17 Am. & Eng. Ency., Law, 1013; Neer v. Oakley, 2 N. Y. Supp., 482; Graser v. Stellwagen, 25 N. Y., 315; 1 Bates on Partnership, sec. 406.

3.   If the partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership, otherwise it is not. The following have been held to be trading partnerships involving the power to borrow and sign mercantile paper:   Manufacturers for sale of soap and candles; of pressed brick; of refrigerators and saloon fixtures; of carriages; of cooperage combined with farming; merchant tailors; clothing and furnishing; wholesale lumber dealers; sugar refinery; pork packers; tannery and finishing shop.   1 Bates on Partnership, secs. 327, 328; Windship v. Bank, 5 Pet., 529; Deitz v. Regnier, 27 Kan., 94; Hoskison v. Elliott, 62 Pa., 393; Holt v. Simmon, 16 Mo. App., 97.

LIGHTFOOT, CHIEF JUSTICE.—The statement of the case by appellants is adopted: The appellee instituted this suit in the District Court of Dallas County, Texas, on December 10, 1894, alleging that he was trustee in a certain trust deed or chattel mortgage made by Bulgin & Company, a firm composed of Frank Bulgin and L. S. Garrison, to secure certain creditors of said firm, upon a certain stock of goods, wares and merchandise, situated in the city of Dallas, Texas; that the appellee, as trustee, and also the creditors secured in said deed of trust, accepted the same on May 29, 1894, on the day when the said trust deed was executed, and that appellee went into immediate possession of the property, and that on May 30, 1894, the defendant Ben E. Cabell, sheriff of Dallas County, Texas, acting through his deputy J. S. Lewis, and under the direction of the appellants, Huey & Philp, wrongfully, maliciously and unlawfully seized certain of the property covered by the said chattel mortgage, amounting in value to $1032.69, an itemized list of which property was attached to plaintiff's petition. Appellee claimed damages in the sum of $1500 for the seizure.

Appellants Huey & Philp answered, first, by general demurrer; second, by general denial, and third, by special plea, to the effect that said Huey & Philp were on May 29, 1894, existing creditors of Bulgin & Company, a firm composed only of Frank Bulgin and L. S. Garrison, in the sum of $500; that on said May 29, 1894, said L. S. Garrison was, and for a long time prior to said date had been, managing partner for said firm, clothed as such partner by agreement between himself and his partner Frank Bulgin with the management of the finances of said firm, and of its books and office business, and with the payment and settlement of its debts; and that said Frank Bulgin was not connected with the business of said co-partnership, except the mechanical part thereof. That the business engaged in by said firm was that of plumbers, plumbing engineering and contractors, and in this business it was necessary for them to have, and they did have, a store house containing supplies necessary in their business, and book accounts and evidences of debt and personal property necessary in the carrying on of their said business of plumbers and contractors as aforesaid.

That the said Frank Bulgin was a plumber by trade, of no business capacity or sagacity, and by agreement between himself and his said partner, L. S. Garrison, was intrusted with none of the business of said firm, except in the supervision and performance of the mechanical part of the business of said firm, and the contracting for supplies necessary in carrying out the contracts made by said firm for the performance of plumbing work. That the said Garrison on said May 29, 1894, was present in the city of Dallas, in his usual place of business, in charge of said firm business as aforesaid. That the business of said firm was conducted in the city of Dallas, and its office and place of business was then situated therein. That the said Frank Bulgin, on said date, with intent to wrong and defraud his partner, L. S. Garrison, and also to wrong and defraud the creditors of said firm, and these defendants par-

ticularly, and for his own benefit, without the knowledge, authority or consent of the said L. S. Garrison, managing partner of said firm, as aforesaid, did, as the defendants are informed, assume to make and execute, acting alone and without the concurrence of the said L. S. Garrison, a certain instrument, being the same instrument declared on by the plaintiff herein and denominated a "chattel mortgage," whereby the said Bulgin did assume to convey to the plaintiff, Charles Fish, who was then and there a plumber, and an employe of said firm of Bulgin & Company, all of the property of said partnership, including all of its personal property and choses in action, and mortgaged, conveyed, sold and delivered the whole of said property to the said Charles Fish, and by said act dispossessed himself of all power, dominion and control over the business of said firm, and put an end to its business.

That this act on the part of the said Bulgin was done secretly on his part, and without the knowledge, consent or authority of his co-partner, L. S. Garrison, who was then of sound mind, present in the city of Dallas, and every way qualified and capable of transacting business. That the only title appellee had to the property sued for was by and through said instrument of said Frank Bulgin, and the possession delivered to him by said Frank Bulgin of said property. That said L. S. Garrison had not acquiesced in said chattel mortgage, but immediately upon the same being communicated to him, denounced the act of his said partner as being unauthorized and fraudulent, and refused to consent thereto, but wholly repudiated the same.

Appellants Huey & Philp further answered justifying, under a writ of attachment issued at their instance on their debt out of the County Court of Dallas County, Texas, against Bulgin & Company, and levied on the property described in plaintiff's petition. They admitted that their co-defendant Ben E. Cabell was entitled to judgment over against them for any recovery which plaintiff might secure.

Appellant Ben E. Cabell answered by general demurrer, general denial, and plea justifying under the writ of attachment sued out by Huey & Philp, and set up that his co-defendants, Huey & Philp, had indemnified him against loss, and prayed for judgment over against them for the amount recovered by plaintiff, and also for $50 for attorney's fees for defense of this suit. The court instructed the jury to find a verdict for the plaintiff Fish, as trustee, and in favor of defendant Cabell against his co-defendants Huey & Philp, which they did. and judgment was rendered against appellants for $860.62, from which this appeal was taken.

1. The first, fourth, seventh, eighth and ninth assignments of error are presented together in appellants' brief, and under them is presented the question, whether one member of a partnership, the other being present, is authorized, without his consent, to give a chattel mortgage upon the entire stock in trade of the partnership, and thus practically put an end to the business.

The facts in evidence tend to show that the firm of Bulgin & Company was a partnership composed of Frank Bulgin and L. S. Garrison. That they did a plumbing business and had a stock of plumbing supplies and material in Dallas, which was their place of business. Their principal business was done on plumbing contracts for buildings in Dallas and elsewhere. Sometimes they furnished supplies to other plumbers when they were short on material, and when Bulgin & Company were short on material, they would get supplies from other plumbers. Frank Bulgin was a practical plumber and the active manager of the contracting business. L. S. Garrison was not a practical plumber, but sometimes assisted in the general management of the business. On May 29, 1894, Frank Bulgin, as managing partner of the firm of Bulgin & Company, and on his own behalf, executed to Charles Fish, as trustee, a chattel mortgage upon the entire stock of plumbing goods, bath tubs, iron pipe, fittings, sewer pipe, valves, brass goods, marble and earthen ware, and all fixtures situated in the one-story frame building on the south side of Main street in Dallas, and on the vacant lot adjacent to said store, and also all demands held by the firm in the form of notes or accounts. This included about all the assets of the firm, except $300 in money retained by Frank Bulgin for his own use. Said instrument was executed to secure four creditors of the firm. At the time of its execution L. S. Garrison, the other partner, was in the city of Dallas at his usual place of business, was not consulted, and did not consent. As soon as he learned what had been done he denounced it, and notified appellants Huey & Philp, and other creditors of the partnership, that he objected to the chattel mortgage, and advised them to protect themselves. Huey & Philp then attached the goods.

The case is, in some respects, novel, and we know of no decision in this State, and have been cited to none, covering the precise questions involved.

In the case of Schneider & Davis v. Sanson, 62 Texas, 201, where one member of a partnership, in order to prevent the firm property from being attached, sold it in payment of partnership debts, and the other partner acquiesced, the contest being among creditors, the Commission of Appeals held that the sale was valid, and this decision was approved by the Supreme Court. Judge Watts in delivering the opinion laid down the doctrine, that "one partner has authority and may sell the whole or any part of the assets of the firm in the regular course of business, or for the purpose of paying the debts of the firm, where there is no fraud in the sale."

In the case of Johnson v. Robinson, 68 Texas, 399, where one partner (the other being absent and having acquiesced) made a partial assignment for the payment of a firm debt which was being pressed, Judge Gaines said: "It is generally held that one partner can not without the authority or consent of his co-partner, make a general assignment. An exception is recognized when one partner has the entire management of the business, or the other is absent, so as to be beyond

the reach of prompt communication. In this case it appears that the partner who did not assign was absent from the State at the time of the transaction. The power of one partner, however, to mortgage the firm property or to sell it for the payment of the partnership debts, must be conceded. He can also transfer it directly to a partnership creditor in discharge of the obligation. No reason is seen, therefore, why one, his partner being absent and the payment of a partnership debt being pressed, may not assign a part of the partnership assets to pay the particular debt, and provide at the same time for the distribution among the other creditors of any surplus of the assigned property, which may remain after the payment of the preferred obligation. So far as the record discloses, the absent partner has acquiesced in the assignment under consideration."

The case of Frost v. Wolff, 77 Texas, 455, turned upon the power of one partner of a firm to convey partnership realty and the acquiescence of the other partner. See also Land Co. v. Dunlap, 4 Texas Civ. App., 315; Baldwin v. Richardson, 33 Texas, 16.

In Kellar v. Self, 5 Texas Civ. App., 393, this court fully recognized and applied the doctrine laid down by Judge Gaines in the case of Johnson v. Robinson, above, to the effect that one partner in a trading partnership, in the absence of the others, and there being no chance to confer with them, could execute a valid mortgage upon the firm assets to pay firm debts. See also, Johnson v. Shoe Co., 5 Texas Civ. App., 398.

In the case of Stout v. Bank, 69 Texas, 391, Judge Stayton quotes with approval from Mr. Story, as follows: "Every contract in the name of a firm, in order to bind the partnership, must not only be within the scope of the business of the partnership, but it must be made with a party who has no knowledge or notice that the partner is acting in violation of his obligation and duties to the firm, or for purposes disapproved of or in fraud of the firm." Story on Partnership, 128.

We find no case in this State which holds that one partner of a firm can, without the consent of his co-partner, and against his wishes, such partner being present, execute a valid mortgage upon all the firm assets to secure certain preferred creditors to the exclusion of others. Mr. Parsons lays down the rule that if a partner undertakes, in an unusual way, to pledge or mortgage the firm assets, he has not necessarily such power, and he questions it on the ground that such a transaction seldom, if ever, belongs to the regular business of the firm,—and if sustained at all, it should be shown to have been done in good faith for the advantage of the firm, and must be reasonable within itself. Parsons on Partnership, sec. 109, notes 1 and 2, and authorities there cited.

The power of a partner to mortgage or pledge the assets of the concern, in good faith, to pay debts, is generally recognized. 1 Bates on Partnership, sec. 406. But where the scope of the partnership business does not embrace the power of a partner to sell and dispose of the

assets of the concern, such power will not be implied. Id., sec. 404; Sloan v. Moore, 37 Pa. St., 217; Cayton v. Hardy, 27 Mo., 536; Drake v. Thyng, 37 Ark., 228; Blaker v. Sands, 29 Kan., 551; Hunter v. Waywick, 67 Iowa, 555.

Mr. Bates thus clearly states the power of a partner over the firm assets: "As a partner has the power to sell whatever is held for sale, and as it is impossible to say at what point the power ceases, it follows that he has power to sell all such property in bulk or as an entirety. But one of the reasons which forbid him to assign all the property for the benefit of creditors without the consent of his co-partners, if they are accessible, viz: that this is not transacting the business of the firm, but destroying it, applies here to limit the power of selling to carrying out the business of the firm, and furthering its objects.

"On principle it would seem to make no difference whether the property is real or personal. If it is property in the continued use of which the transaction of the firm's business depends, he has no implied power to sell it, whether it be the store or factory in which the trade is carried on, or the office furniture or safe, or partnership books, or the ploughs, horses or implements of a farming partnership, or the tools and machinery of a mechanical occupation, or the library and instruments of a professional one * * *. A partner has a power to mortgage the entire stock, subject to the same limitations, doubtless, as in selling the whole." See also, Osborne v. Barge, 29 Fed. Rep., 725.

In the last mentioned case Judge Shiras, in delivering the opinion of the court, said: "If a mortgage is given upon the stock in trade of a partnership, and under such circumstances that the giving thereof practically terminates the business of the firm, no reason is perceived why the assent of both partners is not as essential to give validity to such an instrument, as in the case of a general assignment. The mortgage executed to complainants covered practically all the stock of the firm, came due in twenty-four hours after its date, and gave the mortgagees full power to take immediate possession of the property, and to sell the same for the payment of the mortgage debt. The practical effect, therefore, of the instrument, if enforced, would be to terminate the business of the firm, and to hand over the control and right of disposition of the partnership property to a third party. The right to thus destroy the life and business of the firm is not possessed by one of the partners, and, to be valid, it must appear that such an instrument was executed by the authority of all the partners."

The attempted mortgage before us conveys all the assets of the concern to a trustee to secure certain named debts, and provides that the trustee shall take immediate possession, and if all the debts mentioned are not then paid in full, he shall sell the property for cash and pay them; thus, evidently contemplating an immediate destruction of the business of the firm, and that without the consent of the other partner, and without regard to any other creditors except the favored few mentioned in the instrument.

In this case appellants insist that the firm was a non-trading partnership, that its principal business consisted in plumbing and in carrying out plumbing contracts, that they kept on hand a lot of supplies for their own use in their business and only sold to other plumbers occasionally for accommodation, and bought from other plumbers when they were out of certain articles. That they were in no sense a trading partnership, and that one partner had no power, either express or implied, to sell all the assets. There was evidence tending to establish the truth of these contentions.

It is well established, that one member of a non-trading partnership has no power to sell or mortgage all the assets of the concern without the consent of his co-partner, unless the power is given otherwise than by implication from the ordinary nature of the business. Randall v. Meredith, 76 Texas, 683; Lowman v. Sheets, 124 Ind., 416; McNair v. Wilcox, 121 Pa. St., 442; Sloan v. Moore, 37 Pa. St., 217; Sobernheimer v. Wheeler, 45 N. J. Eq., 614; 17 Am. & Eng. Ency., Law, 994,995.

In the case of Randall v. Meredith, above, Judge Stayton, in drawing the distinction between trading and non-trading partnerships, quoted with approval the definition of Mr. Bates. The court said:

"There is some difficulty in determining in all cases whether a partnership belongs to the one class or the other. In Kimbro v. Bullitt, 22 Howard, 268, it was said that 'whenever the business, according to the usual mode of conducting it, imports in its nature the necessity of buying and selling, the firm is then properly regarded as a trading partnership and is invested with all the powers and subject to all obligations of that relation.' A recent writer suggests, perhaps, a fuller definition, as follows: 'If the partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership; otherwise it is not.' Bates' Law of Part., 327."

From the authorities, we conclude, that as a general rule, where the nature of the partnership and the business conducted by it are such that each of the partners has the power to dispose of the property of the concern by sale, one of the partners, in the absence of the other or with his consent, may, in good faith, mortgage or sell the firm property to secure or pay the firm debts. But one partner in a non-trading firm usually has no power to mortgage or sell all the assets of the concern, contrary to the wishes of his co-partner or in fraud of his rights or in fraud of the rights of other creditors of the firm, so as to put an end to the partnership business and thus, by the force of his own will, become the executioner and the administrator of the concern.

Under the facts proved, the court erred in charging the jury to find a verdict for the plaintiff.

Under the second, third and fifth assignments complaint is made that the court refused, at appellants' request, to charge the jury upon the

issue as to whether the firm of Bulgin & Company was a trading or a non-trading partnership. The special charge requested is, in part, the language of Mr. Bates as quoted with approval in Randall v. Meredith, 76 Texas, 683, but in attempting a slight change, the special charge requested is awkwardly worded, and is calculated to confuse. The facts of the case called for a proper charge upon the question, and the court erred in not submitting the issue to the jury.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*