**ROBERTSON v. LANGFORD INV. CO.**

No. 12814.

Court of Civil Appeals of Texas.
Fort Worth.

April 29, 1933.

Rehearing Denied June 3, 1933.

E. C. deMontel, of Wichita Falls, for appellant.

W. E. Fitzgerald, of Wichita Falls, for appellee.

DUNKLIN, Justice.

The Langford Investment Company recovered a judgment against R. R. Robertson for the sum of $800.85, the amount due on an account for merchandise sold to the defendant and for services rendered, and the defendant has prosecuted this appeal from that judgment.

The trial was without a jury, and judgment was rendered upon findings of fact and conclusions of law of the trial judge, which, stated in a narrative form and omitting useless repetitions of "I find that," are as follows:

"Findings of Fact.

"1. The Langford Investment Company is a corporation, incorporated for the purpose of acting as trustee for the Langford Trust Estate, and was acting as trustee for said estate at the time the account herein sued on was incurred.

"2. Dixon Motor Company was originally a partnership composed of L. L. Dixon and Langford Investment Company, acting as trustee for Langford Trust Estate. P. P. Langford conducted the business for and on behalf of the plaintiff as trustee for the Langford Trust Estate. Said partnership was incorporated Oct. 1927.

"3. The defendant R. R. Robertson became indebted to the plaintiff by open account for the various items set out in Exhibit A to plaintiff's first amended original petition, and that said account sued on and evidenced by said exhibit is just, due and correct and amounts in the aggregate to the sum of $800.-85.

."4. The accord and satisfaction pleaded by the defendant arose by virtue of an agreement made between R. R. Robertson and L. L. Dixon, whereby Dixon agreed to pay one-half of the amount Robertson agreed to settle the case of Harry M. Schaffer v. R. R. Robertson, No. 19,497, District Court of Wichita County, Texas, wherein Jerry Schaffer sued R. R. Robertson for certain plans and specifications drawn by the said Jerry Schaffer as architect on the contemplated building which the said R. R. Robertson desired to build and lease to the Dixon Motor Company, amounting to the sum of $4,-430.53, and in this connection, I find that the suit was settled for $1,750.00 on or about the 19th day of May, 1927.

"5. This agreement made by L. L. Dixon was not disclosed to P. P. Langford, who was acting officer for the Langford Trust Estate, his co-partner.

"6. At no time during the partnership of the Dixon Motor Company was this agreement of the said L. L. Dixon made known to the partnership or in any manner set up on the books as a credit to the said R. R. Robertson.

"7. The said R. R. Robertson had an account with the Dixon Motor Company at the time of said agreement by L. L. Dixon with

R. R. Robertson and at all times thereafter up to and including the date of June 30, 1930, and at various times bought cars and made cash payments on his account and incurred liability for charges such as are set out in the account sued on.

"8. In the latter part of 1928 L. L. Dixon sold his stock in the corporation known as Dixon Motor Company to the Langford Investment Company, trustee, for the benefit of Langford Trust Estate, and at said time, the defendant R. R. Robertson knew that he had never been given credit for the $875.-00. Charlie Nolan became manager of the Dixon Motor Company upon the retirement of L. L. Dixon, and this was in the latter part of the year 1928. Immediately after Nolan became general manager for the Dixon Motor Company he promised R. R. Robertson that he would see Dixon with reference to the purported agreement, and if Robertson would continue trading with the Dixon Motor Company, he would allow him a credit on his account for said $875.00.

"9. R. R. Robertson kept informed as to the status of his account with the Dixon Motor Company and knew that the $875.00 credit had not been allowed, or by the use of reasonable diligence should have known this fact. The $875.00 was never allowed as a credit by the Dixon Motor Company on the R. R. Robertson account. The suit to recover and for an allowance of this $875.00 credit was filed March 11, 1932.

"Conclusions of Law.

"1. I conclude as a matter of law that the plaintiff is entitled to recover, based upon the above findings, against the defendant, R. R. Robertson, the sum of $800.85, together with interest thereon at the rate of six per cent per annum from and after January 1, 1930, and for all costs of suit.

"2. I conclude that the plea of accord and satisfaction which covers the item of $875.-00 was not a legal obligation against the Dixon Motor Company at the time of the L. L. Dixon agreement, and that the agreement was without consideration.

"3. I further conclude that the said item of $875.00 is barred by the Statute of Limitation of two years.

"4. I further conclude, upon the above findings, that the defendant is not entitled to the accord and satisfaction pleaded or the cross action, and that he should take nothing by virtue of said plea."

The agreement of L. L. Dixon to pay one-half of $1,750, the amount for which Robertson settled the suit by Harry M. Schaffer against him for plans and specifications prepared by Schaffer as an architect, which the trial court found was in fact made in paragraph 4 of the findings of facts, and the subsequent agreement recited by the court in paragraph 8 of his findings, by the terms of which Charlie Nolan, as general manager of the Dixon Motor Company, agreed that, if Robertson would continue trading with the motor company, he would be allowed as a credit on his account for goods he might purchase one-half of the $1,750 which Robertson had paid Schaffer in compromise of the former suit, were all alleged by the defendant as a defense to plaintiff's suit and also as a basis for a cross-action against the plaintiff for one-half of the amount so paid to Schaffer. The defense so urged was denominated by the pleader as "accord and satisfaction."

Error has been assigned to the conclusion of law reached by the trial court that the agreement of L. L. Dixon to reimburse Robertson for one-half of the amount the latter paid to Schaffer was not binding on the Dixon Motor Company, and was without consideration to support it.

Apparently that conclusion was based on facts recited in paragraphs 5 to 8, inclusive, of the findings of fact, and particularly that the agreement so made by L. L. Dixon was not disclosed to P. P. Langford, then acting for the Langford Trust Estate, one of the members of the partnership firm of the Dixon Motor Company, and which partnership was later changed to a corporation in the same name; and that thereafter Dixon failed to inform the other member of the firm of such agreement, and failed to make any entry thereof on the partnership books.

Testimony introduced showed without controversy that, at the time Dixon agreed to reimburse Robertson for one-half of the amount the latter later paid to Schaffer, he was general manager in charge of the business of the Dixon Motor Company which was then a partnership, and that the agreement was made on behalf of that firm.

It also showed that the services rendered by Schaffer and for which he had sued Robertson consisted in drawing plans and specifications for a building which Dixon proposed to rent from Robertson when completed for a specified rental. Both Robertson and Dixon consulted with Schaffer with a view to designing a building that would be suitable for the conduct of the business. The specifications first drawn were not satisfactory to Dixon, and the estimated cost of construction by those specifications was $43,000. Dixon then took up the matter with Schaffer with a view to getting other plans and specifications more suitable for his business, and another set of plans was prepared for a building estimated to cost more than $80,000, which was more than Robertson was willing to expend. Without further consultation with Robertson, Dixon then rented another building into which he moved the business of his firm. The proposed building was never constructed, and therefore none of the plans was used.

After Schaffer instituted his suit against Robertson, in which he claimed some $4,300 for the work performed by him, Robertson, in company with his, attorney, visited Dixon and argued with him that, since the second set of plans for the proposed building had been made at his instance, he should pay for them, and further proposed that Robertson would make him a party to the suit instituted by Schaffer in order to enforce that demand. Thereupon Dixon stated, in effect, that it would be detrimental to the business of his firm to be so involved in that litigation, and in that connection told Robertson to go ahead and settle with Schaffer for the lowest price possible, and that his firm would pay one-half of the amount.

■ It is our conclusion that such evidence showed a valid consideration for the agreement so made, and that it was made within the scope of the authority of Dixon as general manager of the firm, and was therefore binding upon the firm; unaffected by Dixon's failure thereafter to notify his copartner of such agreement and his failure to enter it in the books of the firm. 4th C. J. pp. 830 to 832, and p. 861, par. 396; Stout v. Ennis, 69 Tex. 384, 8 S. W. 808.

The evidence further showed without controversy that the contract recited in the trial court's findings, in paragraph 8, was made by Charles Nolan after the Dixon Motor Company was incorporated and after he became its general manager and for and in behalf of the corporation; and that Nolan was induced to make the same by virtue of the fact that, when the corporation was organized, it took over the assets of the partnership in the same name and expressly assumed all its obligations, and also by Robertson's threat to sue to enforce that contract, and further by reason of the agreement that, if Robertson would continue trading with the Dixon Motor Company, the company would satisfy Robertson's demand by allowing him a credit on his future account for goods purchased and service rendered to the extent of the sum of $875, which was one-half of the amount paid to Schaffer by Robertson.

■ It is our conclusion that that contract was likewise supported by a valuable consideration, and that it was binding on the corporation because it was made by Nolan as its general manager. 1 Tex. Jurisprudence, p. 271, § 30; 10 Tex. Jurisprudence, p. 138; 2 Tex. Jurisprudence, pp. 443–445, pars. 50, 51, and other authorities cited above.

The finding made by the court of the latter agreement in connection with the further findings recited in paragraph 9 of the findings of fact seem to have been made the basis of the conclusion reached that Robertson's cross-action was barred by limitation; although the final conclusion of law reached indicates that by reason of all the facts found the defendant had failed to sustain his plea of accord and satisfaction.

■ We believe that the plea designated as "accord and satisfaction" was essentially a plea by way of offset to the account sued on by plaintiff, and that limitation would begin on each item of indebtedness of the Dixon Motor Company to Robertson thereafter accruing as the same accrued, and when credit therefor was denied. The record does not disclose the account of such items immediately following the agreement so made by Nolan; the only account in evidence being that sued on. For aught that appears in the record, Robertson may have made purchases from the corporation or may have been supplied with services by the corporation prior. to such as appears in the account sued on, which could have been liquidated by credits under Nolan's agreement, and that the right to assert the same as an offset would have been barred by limitation, leaving subsequent transactions of like kind, including the account sued on, not subject to that bar. The burden was on defendant, Robertson, to plead and prove the items for which the corporation should have allowed him credit by reason of its agreement already mentioned, but credit for which was refused, and the dates those items accrued in order to sustain his plea of offset. In the absence of such a showing, it would be impossible to determine the merits of plaintiff's defense of limitation to that demand.

Since it appears that the conclusion reached by the trial court that the contract by Dixon who was the general manager of the partnership was unenforceable for lack of consideration and lack of authority of the firm he represented was one of the main grounds upon which the offset pleaded was rejected, and since it also appears that the further conclusion reached that the offset was barred by limitation was not supported by sufficient evidence in the respects stated above, we have concluded that the judgment should be reversed and the cause remanded for further proceedings not inconsistent with the foregoing conclusions.

### On Motion for Rehearing.

If the Dixon Motor Company contracted and agreed with Robertson to allow him credits for the items for repairs and services, then Robertson would have the right to recover therefor on his cross-action as an offset to plaintiff's demand whether he did or did not pay such items at the time they accrued. But limitation would begin to run on the cross-action as against each of those items at the respective dates of their accrual. This observation has reference only to the plea of limitation as against the cross-action and not as indicating any opinion as to the merits of the cross-action.

The motion for rehearing is overruled.