**Dr. Louis A. ENSENAT, Appellant,**

v.

**Juan C. VAZQUEZ et ux., Appellees.**

No. 13988.

Court of Civil Appeals of Texas.

Houston.

March 14, 1963.

Rehearing Denied April 18, 1963.

J. Leonard Gotsdiner, Ranseler O. Wyatt, Houston, for appellant.

Joel W. Cook, Houston, on appeal only, for appellee.

WERLEIN, Justice.

Appellant, Dr. Louis A. Ensenat, appeals from a judgment rendered against him and in favor of Juan Carlos Vazquez and wife, Diana Vazquez, in the sum of $970.00, based on the jury verdict in this consolidated cause comprising appellant's suit No. 540,722 brought against appellees to recover a balance of $27,166.62 allegedly owing appellant on several notes, after allowing for payments and credits, and appellees' suit No. 539,778 brought against appellant for cancellation of such notes, for usury, and for damages to appellees' reputation.

Appellant contends that the finding by the jury that on or about August, 1959, an agreement was made between appellee and appellant whereby appellee agreed to convey to appellant the Light House Drive-In in exchange for appellant's agreeing to cancel all indebtedness owed by appellee and his wife to appellant, is against the overwhelming weight and preponderance of the evidence. We have carefully read the statement of facts and examined the record in

an effort to determine whether this point should be sustained. The testimony with respect to the transactions between appellant and appellee is both conflicting and confusing.

Appellant alleged that in May, 1957 appellee and his wife made and executed and delivered to him their certain promissory note for $2,600.00, payable in monthly installments of $25.00 for a period of two years, with balance in the sum of $2,000.00 payable on May 28, 1959, which note was secured by a chattel mortgage on the personal property, fixtures and equipment in the Light House Drive-In; that in June, 1957 appellees executed and delivered to appellant their note for $10,280.00, payable in specified monthly installments for two years, with the balance in the sum of $6,000.-00 being due and payable on June 10, 1959, which note was secured by a chattel mortgage covering the furniture, fixtures and equipment in the building, and also the building owned by appellees and known as the Light House Drive-In, which appellee, Vazquez, had constructed on leased land; and that in September, 1958, said appellee executed a $7,200.00 note, payable to appellant in monthly installments. This latter note is dated October 17, 1958, and is signed by Julio Voirin and Adolph Voirin, as well as by appellee, Juan C. Vazquez. Appellant also alleged that in February, 1959 appellee executed and delivered to him a note for $4,200.00 payable in weekly installments; and that in January, 1959 appellees made, executed and delivered to appellant a note in the sum of $5,500.00 payable to appellant in monthly installments. This latter note appears to be actually in the sum of $5,-550.00 dated January 21, 1959.

Appellant further alleged that the $2,-600.00 and the $10,280.00 notes were past due and in default, and that the balance owing thereon as of November 14, 1959 was $9,312.72; that appellees were notified that appellant would exercise his rights of foreclosure and the sale of the property securing such notes would be held on November 23, 1959; that the sale was actually conducted

on November 24, 1959, all parties being notified thereof, and that appellant bid for the personalty and fixtures, including the building, the sum of $650.00, which he credited on the amount owing him by appellees.

In answer to a request by appellant for admissions, appellee admitted that he received a letter addressed to him and his wife notifying them as of November 14, 1959, of the amount due and owing on said two notes and of the auction sale which would be conducted at the premises known as the Light House Drive-In; that after being so notified appellees filed suit against appellant in the District Court of Harris County, alleging in their petition "that such sale, if conducted will cause and create a deficiency in the moneys alleged to be due the Defendant, Dr. Louis A. Ensenat;" that a show-cause hearing with respect to Cause No. 539,778 was set for the morning of November 23, 1959, and at such time an agreement was entered into giving appellant the right to proceed with the foreclosure of the chattel mortgages on November 24, 1959 without prejudice to any matters arising out of any litigation; and that neither of the appellees was present at the time of the auction.

On November 20, 1959, which was after appellees received notice that the chattel mortgages would be foreclosed on the Light House Drive-In, they filed said cause No. 539,778 against appellant, and on August 10, 1960 filed their first amended original petition in which they alleged, among other things:

"Plaintiffs (appellees) would show that on or about August 3, 1959, Plaintiffs and Defendant (appellant) entered into an agreement whereby Plaintiffs did agree to convey to Defendant all of the property and equipment located at 2215 Clinton Drive, Galena Park, Texas, including the business and good will of the premises known as Light House Drive-In, for and in consideration of the cancellation by the Defendant of all existing indebtedness owed or owing to

Defendant by Plaintiffs. Pursuant to the foregoing, Defendant, Dr. Louis A. Ensenat, did hire and employ one Louise Alhand to manage, control and operate said business and on August 3, 1959, said Defendant by and through his employee, Louise Alhand, did take the control, management and operation of said business."

In answer to appellant's amended petition, appellees admitted the execution of the $2,600.00 and $10,280.00 notes and the chattel mortgages, denied other allegations, and then pleaded the alleged agreement substantially as in their amended petition except the date of the agreement was alleged to be September 23, 1959.

On May 10, 1961, in Cause No. 539,778, appellees filed their supplemental petition in which they admitted the execution of the note in the sum of $5,550.00 which they had previously denied executing, but alleged that there was a failure of consideration for said note, in that said note was executed to cover unaccrued rent on the Light House Drive-In.

Appellee testified with respect to the agreement entered into, in substance, that he told the appellant that he had to take care of two drive-ins that belonged to appellant as well as the Light House Drive-In and it was too many hours' work. He also testified: "I tell him I can take the other two drive-ins and he take the Light House Drive-In worth $19,000.00. I tell him you take that and I take other two drive-ins." The following testimony was adduced:

"Q What did the doctor propose or did he propose anything based upon that conversation?

"A I tell him the way we can do it. You can give me the other two drive-ins without money to nobody and you take mine and we are even and I sell the other ones and you keep this one and this is good business, and he said that is all right, and that is where we started.

"Q He agreed positively to do that?

"A Yes.

"Q There was no question in his mind about that?

"A No, sir.

* * * * * *

"Q If I understood you correctly you made an agreement with Dr. Ensenat?

"A Yes.

"Q Whereby he takes the Light House Drive-In?

"A Yes.

"Q He cancelled all indebtedness owed by you to him?

"A Yes.

"Q He has no obligation or rights against you or anything else belonging to you?

"A Yes.

"Q This was approximately the first part of July, 1959?

"A Yes, sir.

"Q What did either of you do to consummate or complete this agreement?

"A He bring me two ladies to drive-in to tell me to choose which I think is the best one. They were Mrs. Louise Alhan and Mrs. Brown. I chose Mrs. Alhan. Her father was sick and she could not start right away on the 1st of July so I had to run the place another month until the 1st of August.

* * * * * *

"Q And you decided on Mrs. Louise Alhan?

"A Yes. She showed more interest in the drive-in.

"Q She could not start for approximately thirty days?

"A Yes, because her father was sick

* * *

"Q Before she started what did the doctor do? You had utility deposits, didn't you?

"A Yes. I still run the place like I usually do. Instead of the doctor taking over in July he took over in August.

It will be noted that in one of the pleadings of appellees the date of the alleged agreement is given as August 3, 1959, while in another pleading it is given as September 23, 1959, whereas appellee testified that the agreement was the first part of July, 1959, although everything was postponed to August 3, 1959. It will further be observed that appellees at no time pleaded there was an agreement between appellant and appellee to the effect that appellee would take the other two drive-ins and that appellant would take the Light House Drive-In. Yet the testimony of appellee shows that the agreement he allegedly entered into was a positive agreement covering the exchange of the drive-ins. After so testifying, appellee, in answer to the leading question, "He cancelled all indebtedness owed by you to him?" answered, "Yes." Appellee also testified that after such agreement he worked in the doctor's clinic for one month when he was told that the doctor didn't need him any more and he then looked for a job in another place. He testified, "I told him when I left the hospital I told him that we would make the papers on this deal and he told me to go and see his lawyer." The following then occurred:

"Q The doctor told you to go to see him to draw the papers on this agreement?

"A Yes, sir.

"Q Did you?

"A Yes, sir, I went in his office. When I come to fix the transfer to the doctor and he told me, 'Well, before we transfer I want you to',

the doctor say, 'I want you to sign another note for $5,000.00 to pay $20.00 per month.'

* * * * * *

"Q What did you say to that?

"A I say, 'Our agreement was to transfer all this here and he is to keep the Light House and I was to keep the other two and that is it.' He said, 'No.' And I tell him, 'I cannot pay that much. I do not think I owe anything to him.' He kept on and I said, 'Let me go home and discuss this with my wife,' and this is when I came to you."

Appellant testified unequivocally that he never had any agreement with appellee with respect to making an exchange of the drive-ins, and that he did not at any time agree to cancel the indebtedness owing him by appellees. Appellant had in addition to the $2,600.00 and the $10,280.00 notes, the $7,200.00 note which had been signed by appellee, and the $5,550.00 note, and he also testified as to a $4,200.00 note which, however, he could not locate. There is no pleading whatever by appellees regarding the $7,200.00 note. Appellant objected to the submission of issues on the $7,200.00 note, which appellee testified, and the jury found, he had signed merely to identify the other parties who signed the note with him, on the ground that there was no pleading whatever by appellees in regard to such note.

There is evidence showing that at the time of the alleged agreement the Light House Drive-In was in a rather run-down condition, and was probably not worth anything like the amount of the indebtedness secured by it. Both the $2,600.00 and the $10,280.00 notes were at that time past due, and appellant was prepared to foreclose his chattel mortgages against the property, which he shortly thereafter did.

 ■ We are of the opinion that the finding of the jury, that on or about August, 1959, an agreement was made between ap-

pellee and appellant whereby appellee agreed to convey to appellant the Light House Drive-In in exchange for appellant's agreeing to cancel all indebtedness owed by appellee and his wife to appellant, is against the great weight and preponderance of the evidence. It seems highly improbable the appellant would agree to accept property which he would soon acquire by foreclosure, and in consideration therefor release an indebtedness claimed by him in excess of $27,000.00, and at the same time give appellee the other two drive-ins. Moreover, the agreement as testified to by appellee is not the same as the agreement pled by him. He pled that the agreement was that he would convey the Light House Drive-In to appellant in consideration of appellant's release of all indebtedness owing him by appellees. At one time he testified that the agreement was that he was to exchange the Light House Drive-In for two drive-ins owned by appellant and also the indebtedness was to be released. He also testified that when he was at the office of appellant's lawyer, he told them the agreement was that appellant was to keep the Light House Drive-In and he, appellee, was to have the other two drive-ins. In such testimony there is nothing to indicate that there was also to be a release of any indebtedness.

Furthermore, the testimony of appellee with respect to any agreement indicates not only confusion in his mind as to what such agreement was, but makes it uncertain as to whether there was a definite oral agreement completed or whether it was the understanding of the parties that an agreement would be completed and consummated by the execution of papers at the lawyer's office. No issue with respect to such matter was submitted to the jury, although appellee's testimony indicates that it was contemplated that transfer papers and a release were to be executed.

There is evidence also that appellant had invested in the Dairy Malt Drive-In some $3,400.00, and $5,000.00 in the Tastee Freeze Drive-In, which he either owned or held mortgages against securing him in such amounts. Assuming there was an agreement such as testified to by appellee with respect to exchanging the drive-ins, which agreement was not pleaded, it is difficult to understand why no trial amendment was filed by appellee near the beginning of the trial when he testified to such agreement, and when his attention was directed to the fact that no such agreement had been pleaded by him. It seems rather strange that appellee has taken no steps, as far as the record reflects, to acquire the other two drive-ins which appellant testified he still owns, if appellee and appellant had entered into such agreement. Appellee also testified there was only one agreement between himself and appellant. No issue was requested or submitted in regard to the agreement testified to by appellee with respect to the exchange of drive-ins.

■ Appellant testified that he assumed supervisory control over the Light House Drive-In when appellee came to him and advised that he was overworked and could not carry on, but that he did so to protect his investment since appellee was in default in the payment of said notes and was in such condition apparently that he could not continue to operate the Light House Drive-In. We think appellant's conduct in assuming supervisory control over the business is consistent with his contention that he was merely protecting his investment.

The testimony of appellee with respect to what indebtedness was to be released in accordance with the alleged agreement, is also indefinite and confusing. At one time he testified all indebtedness would be released. At another time he testified that appellant was supposed to release about $16,000.00 of notes, consisting of the $2,600.00, $10,280.00 and $5,550.00 notes.

■ Appellees assert that the testimony of appellee with reference to the future formal releases and transfers of the business did not negative the existence of the present executed oral agreement. 13 Tex. Jur.2d, p. 156, Contracts, § 32. See also

Simmons & Simmons Construction Co. v. Rea, 155 Tex. 353, 286 S.W.2d 415. The rule is laid down by Williston as follows:

"If, therefore, the parties have definitely agreed with one another upon all the terms that a proposed written contract shall contain, there is a contract, for they have made positive promises to one another, certain in their content and sufficient as consideration for one another." Vol. 1, § 28A, p. 64.

We are in accord with the foregoing principle of law. It is our view, however, that in the instant case the evidence is insufficient to support the jury finding that there was such oral agreement entered into.

■ It is our view, also, that there is insufficient evidence to support the finding by the jury that appellees paid appellant $485.00 interest. It was error, therefore, for the court to decree that appellees were entitled to recover against appellant $970.00 representing double the amount of usurious interest paid appellant. In view of the possibility of another trial, we shall consider appellant's points of error with respect to usurious interest.

The $2,600.00 note dated May 28, 1957 on its face bore 6% interest per annum, but appellee testified he received only $1,999.00 in consideration for signing such note, which was payable in full on May 28, 1959. Appellee also testified that the only consideration paid him for executing the $10,-280.00 note dated June 10, 1957 and maturing in full June 10, 1959, was $8,000.00. Accepting the testimony of Vazquez as true, each of said notes was in its incipiency usurious, since even without considering the interest called for in such notes, the difference between the face value of each such note and the amount received by appellee for execution and delivery thereof exceeded 10% interest per annum for the life of each

such note. Yonack v. Emery, Tex.Com.App. 1929, 13 S.W.2d 667, 70 A.L.R. 684; Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Schmid v. City Nat. Bank of Wichita Falls, 132 Tex. 115, 114 S.W.2d 854; Standard Finance Corporation v. Havins, Tex.Civ.App., 69 S.W.2d 437, writ dism.

■■ Certain payments had been made on both of the above described notes, but there is no testimony showing how the payments were applied. In the absence of such evidence, it will be presumed that the payments were applied to principal, or the lawful portion of the contract, and not to the payment of usurious interest. Gunter v. Merchant, Tex.Com.App., 213 S.W. 604; Ware v. Paxton, Tex.Civ.App., 266 S.W.2d 218, writ ref., n. r. e. Appellant pleaded, however, that since the execution of said two notes, appellees had paid the sum of $3,330.00 on the $10,280.00 note, which amount included $162.72 which was applied to interest on said note. Double this amount, which appellant has admitted was applied to interest, may be recovered by appellee if the evidence adduced upon a new trial shows such note to be usurious. Under Article 5073, Vernon's Annotated Texas Statutes, where a payment is intentionally appropriated or applied to the discharge of usurious interest, the right to the penalty of twice the amount of interest paid attaches at once, though the principal of the note has not been paid. Taylor v. Shelton, 63 Tex.Civ.App. 626, 134 S.W. 302, writ den.; Stout et al. v. Ennis National Bank, 69 Tex. 384, 8 S.W. 808; Yonack v. Emery, supra; Rosetti v. Lozano, supra.

In view of our holding, we think it unnecessary to discuss appellant's other points of error as they relate to alleged errors which may not occur upon a retrial of the case.

Reversed and remanded.