## ROSEBUD OIL & COTTON CO. v. MERCHANTS' & PLANTERS' OIL CO. (No. 6452.)

(Court of Civil Appeals of Texas. Austin. Dec. 20, 1922. Rehearing Denied Jan. 31, 1923.)

1. **Contracts ⟐346(9)—Under plea of general denial, defense that contract was not binding till put in writing is available.**

In an action on an oral contract to deliver two tanks of cotton seed oil under a plea of

general denial, plaintiff is entitled to the defense that the contract was not to be binding until reduced to writing, though no such defense was specifically pleaded.

2. **Contracts ⟐46 — Whether contract was intended to be binding before reduced to writing held for jury.**

Correspondence about a contract for the sale of cotton seed oil relative to a controversy as to the amount to be delivered thereunder and testimony *held* to raise a question for the jury whether a binding contract was intended before it was reduced to writing.

3. **Trial ⟐350(4)—Submitting sole special issue to jury whether contract was for one or two tanks of cotton seed oil held not error.**

In an action on an alleged contract to sell two tanks of cotton seed oil, where any agreement to deliver more than one tank was denied, *held*, that the court did not err in submitting the sole special issue whether the agreement was to sell one or two tanks, since, if the contract was complete, that was the controlling issue.

4. **Contracts ⟐349(5) — Broker's letter to purchaser of cotton seed oil narrating his understanding of the deal held inadmissible.**

In an action involving the question whether a contract had been made through a broker to deliver one or two tanks of cotton seed oil, a letter written by the broker to the purchaser after the seller had denied the contract was for more than one tank, in which the broker explained his understanding of the deal, *held* inadmissible.

5. **Contracts ⟐175(2)—Testimony of understanding of contract made through broker held admissible to establish terms thereof.**

Testimony of a party's understanding of a contract made through a broker *held* admissible in an action where the terms of the alleged contract were denied.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Action by the Merchants' & Planters' Oil Company against the Rosebud Oil & Cotton Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Spivey, Bartlett & Carter, of Marlin, for appellant.

Frank Oltorf, of Marlin, and O. L. Stribling, of Waco, for appellee.

BRADY, J. Appellee instituted this suit against appellant to recover damages for the breach of a contract of sale by appellant, for failure of appellant to deliver two tanks of crude cotton seed oil, which appellee alleged appellant, in October, 1914, sold and agreed to deliver to it in December, 1914. The purchase and sale was made through a

broker. It was alleged by appellee that on or about December 27, 1914, it made demand for delivery of the oil, and, after being advised by appellant that it would not comply with its contract, appellee purchased in the open market two tanks of oil of the same kind and grade provided for in the contract, causing a loss of $1,760, with interest, by reason of an advance in the market price.

Appellant answered by general and special exceptions and general denial, and specially pleaded that it never offered to sell but one tank of oil to appellee, and that it never authorized the broker to sell for it but one tank.

The case was submitted to the jury upon one special issue, as follows:

"In the first telephone conversation between E. H. Terrell and Geo. Roper, Sr., did the said Roper agree to sell two tanks of oil for December delivery, or did said Roper agree to sell only one tank of oil for December delivery?"

The jury answered:

"Roper agreed to sell two tanks of oil for December delivery."

Upon this verdict and the facts found by the court, the judgment was rendered for appellee as sued for in the petition.

The principal issues are: (a) Whether the negotiations embraced in the first telephone conversation between appellant and the broker, who represented both parties in the transaction, constituted a complete and binding contract, and stipulated for the delivery of two tanks of oil, as found by the jury, or only one tank as contended by appellant. (b) Whether the parties contemplated that their contract should be reduced to writing and signed before it would be binding upon either. There are certain subsidiary questions, some of which will be referred to in the opinion.

There are assignments complaining of the refusal of the trial court to give the following special charge requested by appellant:

"At the time of the first telephone conversation, was it or not the intention or in the contemplation of the parties that before there was any completed contract the terms thereof should be reduced to writing and signed by the parties."

We are of the opinion that these assignments should be sustained.

The rules of law relevant to this question and authorities from which those rules are deduced are well stated in 6 Ruling Case Law, Contracts, § 39, pp. 618, 619. Another statement of the rules governing this subject is to be found in International Harvester Co. v. Campbell, 43 Tex. Civ. App. at page 432, 96 S. W. at page 99, from which we quote:

"The principles applicable to the test of a completed contract are: 'Although the terms of the contract may all be agreed upon, still, if the parties make it a condition to the existence of a contract that the terms agreed upon be reduced to writing, and signed by them, there is no contract until this is done.' 1 Add. Cont. (Morgan's Ed.) § 20. 'On the other hand, it is well-settled law that, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of the present contract. In other words, if the parties make an agreement which they intend shall be binding from the time it is made, effect will be given it from that time, though they intend it shall be superseded by a more formal written agreement.' 2 Whart. Cont. § 645; Beach, Mod. Cont. Law, § 3; Green v. Cole, 103 Mo. 70, 15 S. W. 317; Lowrey v. Danforth (Mo. App.) 69 S. W. 41."

[1] In this case appellee insists that the issue was not raised either by the pleadings or by the evidence, and therefore the court properly refused to submit the issue. We are of the opinion that, appellant having filed a general denial, the defense was available to it under the general issue, without being required to specifically plead that the parties agreed upon or contemplated a written contract to be signed by them. As to the evidence, while it does not appear that in the first telephone conversation there was any express reference to a written contract, it does appear from the testimony of the manager of appellant, who authorized the sale, that he understood and contemplated that a written contract would be furnished, embodying the terms of the sale, to be signed by the respective parties. This is clearly the effect of at least a portion of his testimony. Furthermore, it was the contention of appellee that the contract was made subject to the rules of the Texas Cotton Seed Crushers' Association, one of which rules authorizes either party to demand a formal written contract as soon as the trade is completed. There is also testimony in the record tending to show a practical construction of the parties to the effect that the sale was to be evidenced and completed by a written contract and signed by the parties. Pursuant to the trade custom, the first telephone conversation was followed up by a telegram of confirmation from the broker, confirming the sale of two tanks, and on the same day this was followed by a written confirmation, in triplicate, one mailed to each party by the broker, and one retained by the broker himself. The details of the sale were fully set out in the written confirmation, and specifically stated that the contract was made subject to the rules of the association. The following day appellant's manager wrote a letter to the broker, insisting that appellant had sold but one tank, and had authorized the broker to sell no more, and stated in this letter:

"We are returning your contract for correction, as we refuse this one the way it stands."

On November 2d appellant's manager wrote appellee a letter as follows:

"We not having given Mr. Terrell authority to sell but one tank, we are hereby returning to you the contract sent us for signature. If they are corrected to read 'one tank December,' we will be glad to sign them."

On November 4th, evidently in reply to the letter from appellant, appellee wrote appellant insisting on the delivery of two tanks of oil as evidenced by the telegram from the broker and the confirmations, but stated in the beginning of this letter:

"We again return herewith contracts for your signature covering two tanks of oil bought through Mr. Terrell for December shipment."

The contract was returned by appellant on the following day, unsigned, but the letter indicated that the appellant was willing to furnish one tank, as it contended it had authorized the broker to sell. These letters indicate that both parties were willing to sign the written contracts, provided they were in conformity to their respective versions of the terms. They are also some evidence, at least, that the parties contemplated the execution of written contracts, signed by the parties, to close the trade.

[2] This correspondence, together with the positive testimony of the manager for appellant that there was no contract until the terms were reduced to writing and signed, raised, in our opinion, an issue for the jury. We do not wish to be understood as indicating any opinion that the necessary effect of the letters or the conduct of either party was to establish that a written contract to be signed by the parties was a prerequisite of a completed trade. It may be that the references in the letters to the signing of the contracts was not intended to evidence any original intention to require a written contract before the contract was completed, but were merely the insistence of the parties upon their respective contentions, and a desire of each to get the other party committed in writing to its version. This, however, was a matter for the jury to determine under all the circumstances; the question, after all, being one of the intention of the parties.

Being of the opinion that the special charge should have been given, the judgment will be reversed, and the cause remanded. In view of the probability of another trial, we think it proper to express our views upon some of the questions which will probably again arise.

We hold that there was no error in refusing to sustain the general demurrer and special exceptions of appellant, with relation to the allegations made in the petition that the sale was subject to the rules of the Texas Cotton Seed Crushers' Association. The exceptions were addressed to the entire petition, and, when it is considered in its entirety, we think appellee sufficiently alleged the substance of the rules relied upon in support of the cause of action alleged.

[3] The court did not err in submitting the sole special issue to the jury, as it was a controverted matter under the evidence, and was one of the material issues in the case. Indeed, it was the controlling issue if it was not the agreement and understanding of the parties that the contract should not be complete until reduced to writing and signed.

[4] Appellant complains of the admission in evidence, over its objection, of a letter from the broker to appellant, dated October 27th, the day after the sale, but written after the second telephone conversation, in which appellant disputed the sale of two tanks. The portion of the letter in which Mr. Terrell, the broker, undertook to narrate and give his version of the transaction was, in our opinion, inadmissible. The contents of this letter was but a narrative of the writer, and was not sworn testimony, although the court's qualification states that it was made a part of his answer to a question. We do not think it good practice, to say the least, to permit a witness to attempt to testify to facts by a mere reference to a carbon copy of a letter, which copy he had furnished to the adverse party. Conceding that it was permissible to permit the witness to refer to such letter for the purpose of refreshing his memory, it does not render admissible the document itself.

[5] We think there is no merit in the contention that the court should not have permitted the witness Rice to testify as shown in bill of exceptions No. 3. We do not think the evidence was hearsay, as the testimony related to the contract as understood by Mr. Rice, and as gained from the statements made by Mr. Terrell, who was the broker, and who represented both parties in the transaction. As we understand this testimony, Mr. Rice did not undertake to testify what conversation passed between Mr. Terrell, the broker, and Mr. Roper, appellant's manager, in the first telephone communication, but simply his understanding of the contract which he made through the broker.

There is another contention with reference to the claimed insufficiency of the evidence to show market value of the oil at the end of the contract period, and at the time that appellee was definitely and finally advised by appellant that it would not deliver any oil to it. Perhaps on another trial evidence will be introduced showing the state of the market on all the dates in controversy. There is an agreement of counsel in the record that indicates this was sought to be fixed by agreement, but such may not be the effect of the stipulation. As we do not know what the evidence will be upon another trial, we do not think it proper to express an opinion as

to what date should control as to market value, and as to fixing the damages.

We are of the opinion that the court should not have admitted so much of the letter of E. H. Terrell to appellant, of date November 4, 1914, as undertook to argue the controversy, and to assign reasons for the mistake which had been made. This letter does not appear to have been in reply to a letter from appellant to the broker, as indicated by the court's qualification, but was in response to a letter from appellant to appellee. The letter was not original testimony, and was merely argumentative as sustaining the broker's position, at least with the exception of the first paragraph thereof, and should have been excluded. The evidence leaves it in doubt whether the contract was to be governed by the rules of the Texas Cotton Seed Crushers' Association; and, as there is no finding upon that issue, we do not think it proper to make any hypothetical rulings upon the effect of such rules upon the rights of the parties. The matter may be simplified by finding thereon on another trial, or it may become immaterial.

For the error committed by the trial court in refusing to submit the special issue requested by appellant, as previously indicated, the judgment will be reversed, and the cause remanded. Reversed and remanded.