SIMMONS AND SIMMONS CONSTRUCTION COMPANY, INC.
v. W. L. REA D.B.A. W. L. REA CONSTRUCTION COMPANY

No. A-5205. Decided December 14, 1955
Rehearing overruled February 22, 1956.
(286 S.W. 2d Series 415)

*Powell, Wirtz Rauhut & McGinnis, Robert C. Duke* and *William A. Brown,* all of Austin, for petitioner.

The Court of Civil Appeals erred in holding that this suit was based on a written contract rather than on a written memorandum of an oral contract, since there was no evidence to support a judgment on a written contract, but there was evidence to support a judgment on an oral contract. Gilbert v. Texas Co., 218 S.W. 2d 906, refused, no reversible error; Chavez v. Goodman, 152 S.W. 2d 826; Clegg v. Brannan, 111 Texas 367, 234 S.W. 1076.

*North, Blackmon & White,* of Corpus Christi, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Suit was by petitioner against respondent for damages for breach of contract. The trial court rendered judgment for petitioner. The Court of Civil Appeals reversed and rendered judgment for respondent. 275 S.W. 2d 747, 750.

Respondent was a general contractor holding a contract with the United States government for construction of certain improvements at Foster Air Force Base. Much of the work was to be performed through subcontractors. Petitoner bid on the outside electrical work. In a conference held on July 22, 1952 between petitioner's general manager, Mr. Jones, and respondent's general manager, Mr. Bonvillain, petitioner's offer to do the work was accepted and the parties discussed and agreed on the essential terms of the subcontract. Mr. Bonvillain then reduced the agreement to writing, with several copies, and gave all copies to Mr. Jones.

The writing was in the form of a formal contract. It contained a provision requiring a performance bond to be furnished by petitioner "within five days from date of signing," and concluded: "In WITNESS WHEREOF the parties hereto have executed this agreement, the day and year first above written." Beneath this recitation places were provided for both parties to sign and swear to the instrument.

In response to a question of what Mr. Bonvillain told him when he gave him the written instrument, Mr. Jones answered: "He told me to take them, they were in several copies, take them with me, and obtain a bond, have the contract signed, the documents signed, on behalf of our organization, place with it the bond(s) so obtained, and return it to the W. L. Rea Construction Company for signature." Asked if Mr. Bonvillain said

anything about starting to work, Mr. Jones answered: "He said to be available to start work when the materials were had."

Mr. Jones took all copies of the instrument and on July 26th signed and swore to them as directed, procured a performance bond, and mailed the bond and the copies of the instrument to respondent as directed. Three days later respondent wrote a letter to petitioner returning the bond and the instruments, unsigned, stating that it would be impossible for respondent to enter into the contractual agreement.

In its first amended original petition on which petitioner went to trial it alleged the facts and circumstances surrounding negotiations between the respective agents of the parties and the preparation of a written instrument on July 22, 1952 which it contended created a contractual relationship between the parties, but it did not specify whether the recovery sought was for breach of an oral contract of which the writing signed by it through its agent but unsigned by respondent was but evidence, or of a written contract effective as such without the signatures of the parties. On this phase of the case the vital special issue submitted to the jury, together with its answer thereto, was as follows:

"Do you find from a preponderance of the evidence that both Jack Jones and W. C. Bonvillain intended that the written contract in evidence as plaintiff's Exhibit No. 1 would become binding on both parties on July 22, 1952, whether or not actually signed by both parties?" Answer: "Yes."

The trial court's judgment was based on this jury finding.

The issue is self-contradictory. It assumes the written instrument is a "written contract" and yet inquires if the parties intended it to be a contract. If it was a contract it was binding on the parties, and if the parties did not intend it to be binding until signed it was not a contract. The parties did not object to the form of the issue, however, and we will assume that the jury and the parties understood the words "written contract" to mean "written instrument."

The Court of Civil Appeals, suggesting that there was "evidence in the record tending to show that an oral contract might have been entered into," nevertheless reversed on the ground that petitioner's suit for damages was for breach of a written contract and not for breach of an oral contract and that there

was no evidence of probative value that the parties intended the written instrument to be a binding contract in the absence of the signatures of the parties. In so far as petitioner's pleadings are concerned we are satisfied that they would support a recovery of damages for breach of an oral contract and to this extent we may be in disagreement with the opinion of the Court of Civil Appeals. It would serve no useful purpose to analyze the pleadings in this opinion. Our difference with the opinion of the Court of Civil Appeals in the respect mentioned does not mean, however, that we differ with that court's judgment.

■ At the close of the evidence petitioner might have gone to the jury on either of two theories: (1) that it and respondent had entered into an oral contract and the written instrument, signed by it but unsigned by respondent, was but a convenient memorial of their contract; or (2) that it and respondent had put the terms of their agrement in a written instrument which they intended to be binding as a contract whether or not signed by them. It chose to go to the jury on the latter theory when it accepted, without complaint, the issue submitted by the court. It thus agreed, in effect, that there was no contract between the parties until the terms of the agreement had been incorporated in the written instrument.

To sustain the judgment it must appear there was evidence of probative value to support the finding of the jury on the issue actually submitted. That petitioner chose to rest its case on the theory actually submitted to the jury and realized it must sustain its judgment on that theory is shown by its brief in the Court of Civil Appeals wherein it stated the vital question of fact to be: "Whether there was a meeting of the minds between Bonvillain and Jones that the contract Bonvillain prepared was to become effective immediately with the signature to be a mere formality or whether signature was considered a condition precedent to consummation of the contract."

■ Assuming, then, that petitioner was entitled to his judgment only if respondent breached an unsigned written contract, we must agree with the Court of Civil Appeals that the judgment cannot stand.

The evidence recited in the first part of this opinion is all of the evidence which sheds any light on the intention of the parties at the time the instrument was prepared. Its evidential value can be better analyzed by summarizing it as follows: Mr.

Bonvillain and Mr. Jones orally agreed upon the essential terms of a contract which Mr. Bonvillain immediately incorporated in the written instrument calling for the signatures of both parties and providing for the furnishing of a bond "after signing," which instrument was delivered by Mr. Bonvillain to Mr. Jones with directions to obtain a bond, sign the instrument, return the instrument, with the bond, for the signature of respondent, and be available to begin work when materials were had. Our inquiry is: Does this summary of the evidence show as a matter of law, that it was the intention of the parties that the signing of the instrument was a condition precedent to its becoming effective as a contract? Or stated another way, is there in this summary any evidence of probative value that the parties intended the instrument, when prepared, to be immediately binding as a contract without the signatures of the parties?

■ Decided cases and texts are of little value in answering the inquiry. Williston says that "Parties rarely express a direct intention as to the moment when they conceive themselves to be bound by a contract." Vol. 1, § 28A, p. 64. As a consequence intention is usually an inference to be drawn by the fact finder from other facts and circumstances in evidence. It is difficult, therefore, to mark out boundaries or put down stakes as to when intention ceases to be a fact question and becomes a law question because the facts and circumstances from which the inference must be drawn are rarely the same in different cases.

Petitioner directs our attention to a further statement by Williston as follows: "If, therefore, the parties have definitely agreed with one another upon all the terms that a proposed written contract shall contain, there is a contract, for they have made positive promises to one another, certain in their content and sufficient as consideration for one another." Vol. 1, § 28A, p. 64. But that this language was not intended by the author to be as broad as it reads is evident from his still further statement, quoted by the Court of Civil Appeals, as follows: "It is the undoubted rule that where the contract contemplates the execution of it by signing either party has the right to insist upon the condition, and mere acts of performance upon the part of one who has not signed will not validate the contract.' "

The following observations by Professor Corbin in his work on contracts are pertinent: "If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his *unconditional* assent thereto, there is a written con-

tract. So far as the common law is concerned, the making of a valid contract requires no writing whatever; and even if there is a writing, there need be no signatures unless the parties have made them necessary at the time they express their assent and as a condition modifying that assent. * * * An unsigned agreement all the terms of which are embodied in a writing, *unconditionally* assented to by both parties, is a written contract. * * * All that is necessary to the creation of an informal contract, whether reduced to writing or not, is an expression of assent in any form. The writing itself is not necessary; if put in writing, a signature is not necessary; and even if in writing and signed, a delivery is not necessary. It is an expression of assent that is required. * * * For the validity of an informal contract, a writing is necessary only when at least one of the parties has sufficiently expressed his intention not to be bound without one. In such a case, the agreement must be put in writing; and that writing must be presented to him and receive his assent. No doubt, he normally means that the writing shall be signed by both parties; and he may mean also that it shall be delivered in some fashion. Whatever requirements of this sort that he may have made in advance, he can always bind himself by a clear expression of intent to do so without them; but neither party can of his own motion dispense with such requirements laid down by the other party, any more than he can eliminate any of the provisions of the other party's proposal. If the reduction of the agreement to writing is thus made necessary, an assent to the writing as a sufficient one must also be manifested; this manifestation commonly consists of signing and delivery."[1] Corbin on Contracts, Vol. 1 §§ 31 and 32, pp. 85 and 92.

The rules laid down by Williston and Corbin are clear enough, but the difficulty here, as in so many other fields of the law, is in applying the rules to the facts.

The only facts or circumstances which might be said to give rise to an inferenc that the parties intended the written instrument to be a binding contract at the time it was prepared and wihout the signatures of the parties are that terms of a contract had been agreed to orally and petitioner was told to be available to start work when materials were had. Facts and circumstances in derogation of that inference are: As soon as terms were agreed to orally Mr. Bonvillain had them incorporated in a formal written instrument; the instrument not only expressly provided places for the signatures of both parties but

---

[1]Emphasis ours throughout.

expressly provided places also for the parties to swear to it; one of the terms of the instrument required the furnishing of a performance bond and signing by the parties in connection therewith; the instrument was handed to petitioner's agent with directions to sign it and procure the bond, and with further directions to return it to respondent for signing.

The test for determining if there is evidence of probative value to support a jury verdict is whether reasonable minds might differ with respect thereto. It is our opinion that reasonable minds must agree that Mr. Bonvillain intended that the written instrument be signed by the parties as a condition of his assent thereto. There was nothing in the acts, words or conduct of Mr. Bonvillain, including his statement to Mr. Jones to be available to start work when materials were had, which, in our opinion, reasonably give rise to the inference that he intended to assent to the instrument in the absence of the signatures of the parties or that he intended to waive signing as a condition of such assent.

The cases cited by petitioner are not controlling. It would lengthen this opinion unduly to analyze the facts in each of the cases cited. We are not in disagreement with the general rules announced in International Harvester Co. v. Campbell, 43 Texas Civ. App. 421, 96 S.W. 93, 99, no writ history, and in 122 A.L.R. at pages 1246 and 1263. The rules there announced are in harmony with our quotations from Williston and Corbin. In Rosebud Oil & Cotton Co. v. Merchants' and Planters' Oil Co., Texas Civ. App., 248 S.W. 116, no writ history, the court held, on an entirely different state of facts, that the party contending that there was no intention to contract except by a signed written agreement was entitled to have that issue submitted to the jury. In Joske Bros. v. Pleasants, 15 Texas Civ. App. 433, 39 S.W. 586, writ refused, and Friedman v. Schleuter, 105 Ark. 580, 151 S.W. 696, the bid of the contractor was accepted unconditionally and the contract awarded orally. Suit was for damages for breach of the oral contract. In Girard Life Ins. Co. v. Cooper, 162 U.S. 529, 16 Sup. Ct. 879, 884, 40 L. Ed. 1062, the contractor was directed "to proceed with the work called for by the plans" and the court held that this instruction when considered with the fact that all terms of the contract were orally agreed to supported the conclusion that the parties had entered into an oral contract and intended that a signed formal writing should be but additional evidence of the contract. Moreover, in that case all of the work of the contractor was completed and accepted. In any event, the instruction in the instant case was not to pro-

ceed with the work but to be available. Clegg v. Brannan, 111 Texas 367, 234 S.W. 1076; Chavez v. Goodman, Texas Civ. App., 152 S.W. 2d 826, no writ history, and Galveston Causeway Construction Co. v. Galveston H. & S.A. Ry. Co., U.S. Dist. Ct., 284 Fed. 137, opinion adopted, C.C.A. 5th Circuit, 287 Fed. 1021, simply announce the general rule that when a contract between two parties is reduced to writing and signed by one party and expressly accepted orally by the other, it is sufficient to impress upon it the character of a written instrument, and that a written instrument signed by one party and expressly accepted orally by the other becomes a written contract. This does not mean that a written instrument will be held to be a written contract where one of the parties intended that signing by both parties should be a condition of his assent thereto and there has been no acceptance, but instead a positive rejection, after one party has signed. In this case there was no acceptance of the contract by respondent after petitioner had signed and there was no acceptance by petitioner of any benefits under the writing.

We are not to be understood as holding that petitioner either could or could not have sustained a recovery if he had secured a jury finding that the written instrument was intended by the parties to be only a memorial of an oral contract. That issue is not before us and we do not decide it either way.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered December 14, 1955.

Rehearing overruled February 22, 1956.