**PREMIER OIL REFINING COMPANY OF TEXAS, Appellant,**

v.

**W. A. BATES, Appellee.**

No. 3757.

Court of Civil Appeals of Texas.

Eastland.

April 12, 1963.

Rehearing Denied May 17, 1963.

Liddell, Austin, Dawson & Sapp, Houston, for appellant.

J. Ray Martin, Snyder, for appellee.

COLLINGS, Justice.

W. A. Bates brought suit against Premier Oil Refining Company of Texas, Division Western Natural Gas Company, seeking damages from defendant because of the breach of an alleged lease agreement covering a service station site in Snyder, Texas. The pleadings of the defendant urged defenses based upon the claim that there was no written agreement signed by the parties, the statute of frauds and that there had been actual and constructive eviction and surrender. The case was tried before a jury and based upon its findings judgment was rendered awarding W. A. Bates a judgment against the defendant in the amount of $3,000.00, plus 6 per cent interest from the date of judgment and costs of suit. Defendant Premier Oil Refining Company has appealed.

The undisputed evidence shows that in June of 1960, R. B. Sears contacted appellee Bates inquiring about the possibility of leasing the service station property in question. Bates told Sears he would only lease the premises to a company and not to an individual. Sears was an independent buyer of gasoline and gasoline products and was not an employee, agent or representative of Premier although he did handle Premier products. At Sears' suggestion Bates called Premier concerning a proposed lease of the filling station and thereafter negotiations commenced between Premier and Bates. Mr. Ferrell handled the negotiations for Premier. Bates submitted to Ferrell a written lease agreement which was introduced in evidence over appellant's objection as plaintiff's "Exhibit A." The proposed written lease agreement provided for a term of three years at a monthly rental of $135.00. Ferrell acknowledged that the written lease was received but it is undisputed that the instrument was never

returned to Bates as an executed lease. There is a dispute between the parties concerning the question of whether the instrument was signed by Bates before it was delivered to Ferrell.

The findings of the jury upon which the judgment is based are that Bates and Premier agreed to all the terms and provisions of the instrument described as plaintiff's "Exhibit A"; that Premier allowed Sears to enter into possession of the filling station and accepted or allowed Sears to accept benefits provided by the terms of the form of the proposed written lease, which provided for a term of three years beginning July 10, 1960; that Premier thereby took possession of the premises; that Sears paid rentals to Bates on behalf of Premier for the use of the filling station; that Bates did not evict Premier from the premises and did not give Premier written notice of default and intention to declare the alleged lease forfeited; that Bates and Premier did not agree to terminate the lease and that Bates and Sears did not agree that Sears would rent the premises in question. The jury further found damages to Bates caused by the failure of Premier to pay or cause to pay the unpaid rental provided by the terms of said lease to be $3,-000.00.

Appellant Premier Oil Refining Company urges points contending that the court erred in entering judgment for Bates because the undisputed evidence established that both parties to the alleged contract intended to finalize the lease negotiations with an executed, delivered written lease, and that no lease was ever executed and delivered; that the alleged lease is unenforcible under the Statutes of Frauds; that the evidence shows, as a matter of law, that if any valid lease ever existed, Bates evicted appellant from the premises, in that he put Sears in possession thereof on July 10, 1960 and in that he, Bates, used the premises himself during March and April of 1961, and that Bates accepted surrender of the premises in 1961 and thereby waived any claim for damages for the alleged breach of the lease.

■ We first consider appellant's contention that the evidence shows conclusively that no contract was ever consummated between the parties. It is held that there is no valid contract between negotiating parties until they have reached an agreement concerning all the material terms of a proposed contract. Appellant contends that no contract was ever entered into because the parties were negotiating a contract which contemplated a written agreement as the consummation of the negotiations and the intention of the parties was that there was to be no contract until a writing setting out the agreement was signed by both parties thereto.

Appellee Bates contends that there was an oral contract of lease of the filling station; that "Exhibit A", a proposed written lease was prepared and signed by him which set out the full agreement between the parties; that although Premier did not sign the lease all the terms thereof were fully agreed to by both Bates and Premier; that the writing was a convenient memorial of the contract entered into between the parties; that Sears entered upon the property under the terms of the lease and operated the station in accordance therewith for a period of about 8 months. Appellee contends that Ferrell, Premier's agent, although Sears had so entered into possession of the property for Premier, attempted by introducing a slightly altered redraft of the original memorial of the contract to show that there was never any contract, either written or oral, made and consummated between the parties.

■■ It is a settled proposition of law that if parties negotiating a contract intend that the contract shall be reduced to writing and signed by the parties, and consider a written agreement as the consummation of their negotiations and a prerequisite to a binding contract, then the agreement is incomplete and either party may with-

draw and decline to consummate the agreement at any time before the written agreement is drawn up and signed by both parties. It is also well settled that the parties may, if they so desire, at any time during the negotiations enter into an oral contract, if the subject matter of the contract permits.

In 17 C.J.S. Contracts § 49, at page 391, it is stated that:

"Whether an informal agreement, which according to the understanding of the parties is to be reduced to writing, takes effect as a complete contract at once, or only when a formal written contract is executed, depends on the intention of the parties as construed from the facts of the particular case. * * * there is not a binding contract where, although its terms have been agreed on orally, the parties have also agreed that it shall not be binding until evidenced by writing."

The above stated principal of law is recognized by our Supreme Court in Simmons and Simmons Construction Company v. Rea, 155 Texas 353, 286 S.W.2d 415, in which Chief Justice Calvert, in applying the law to the facts of that case, stated as follows:

"At the close of the evidence petitioner might have gone to the jury on either of two theories: (1) that it and respondent had entered into an oral contract and the written instrument, signed by it but unsigned by respondent, was but a convenient memorial of their contract; or (2) that it and respondent had put the terms of their agreement in a written instrument which they intended to be binding as a contract whether or not signed by them. It chose to go to the jury on the latter theory when it accepted, without complaint, the issue submitted by the court. It thus agreed, in effect, that there was no contract between the parties until the terms of the agreement had been incorporated in the written instrument."

■ The jury in the instant case found in effect that Bates and Premier did enter into a lease contract in accordance with all the terms and provisions of appellee's Exhibit A. The question then, is whether the evidence supports the finding, that is, does the evidence support the conclusion that there was a meeting of the minds between Bates and Ferrell that the contract as set out in the writing prepared by Bates was to become effective immediately, regardless of whether the writing was signed by the parties, or whether the signature of both parties was considered a condition precedent to the consummation of the contract. The test in determining whether there is evidence of probative force to support a finding is whether the evidence is such that reasonable minds might reach the same conclusion. Simmons and Simmons Construction Company v. Rea, supra.

It is undisputed that Ferrell, agent of Premier, and Bates entered into negotiations concerning a lease agreement on Bates' property in Snyder. Bates testified that Ferrell asked him to draw up a lease and that after the writing was prepared he, Bates, signed it, had his acknowledgment taken thereto, and then mailed it to Ferrell. He testified that a few days later he called Ferrell at Longview and was told that the lease was all right except that the name of Premier Oil Refining Company of Texas, Division Western Natural Gas Company, was not correctly stated; that "the lease part was all right"; that everything else was all right, and that he, Ferrell, would make a change to correct the name of Premier on the copies he had and send Bates' copy back to him. Bates further testified that after he had been informed by Ferrell that everything was all right he talked to Sears, who said that he had heard nothing from Ferrell, and that in a few days Sears paid the first month's rent, moved into the station and started operating it; that he, Bates, did not tell Sears to move in. Ferrell testified that he had discussed with Sears the possibility of subleasing the station to him in case Premier leased the

property from Bates, but denied that any such lease had been consummated. Sears did not testify that Premier had leased the station to him. Ferrell stated that he had never entered into any kind of written agreement with Sears; that he did prepare another form of lease, correctly showing the name of Premier, and containing other provisions different from the lease prepared by Bates, among which was a provision that the station could be subleased; that when he came to Snyder with the purpose of consummating the transaction if the form of the lease was agreeable to Bates he found Sears in possession of the premises and decided to let the matter drop. Sears stated that prior to his taking possession of the station Bates had told him that Premier had leased it and that it was his understanding that Premier was to have possession after July 10th. It is undisputed that Sears did enter into possession of the property and paid Bates $135.00 for one month's rent, which was the rent provided for by the terms of the proposed lease. Sears continued making such monthly rental payments for eight months. Bates testified that Sears operated the station under the terms of the lease. Sears sold Premier products during the time he operated the station. Bates further testified that Sears knew about the lease and discussed it with him; that Sears recognized it and complied with it for approximately eight months; that he and Sears never had any difficulty, but that before Sears left, Mr. Ferrell on one occasion told him that he was having some difficulty with Sears, although he did not know anything about the business arrangement between them; that soon thereafter Sears moved out without any notice and he never knew why Sears left.

■ The above evidence does support the conclusion that Bates and Premier had agreed upon the terms of a lease contract on Bates' property but it falls short of meeting the burden which rested upon appellee. The evidence is undisputed that in the beginning of the negotiations a written lease was contemplated by both parties. It is undisputed that no written contract was ever entered into. The question is did the parties enter into an oral lease contract, which they intended to be effective regardless of whether the writing which had been prepared was signed by the parties? Bates' testimony may support the conclusion that he so intended, but such an intention by both Bates and Premier's agent, Ferrell, was necessary to constitute a binding contract. The evidence, in our opinion, does not support such a conclusion.

There was no testimony by any witness to the effect that Ferrell intended for Premier to enter into an oral lease contract. All of the testimony which bears upon this question is to the contrary. In this connection Bates himself testified that both he and Ferrell wanted a written lease. He stated in effect that he wouldn't think Premier would want to take the lease and put property on the premises without such a lease; that both parties contemplated that after the negotiations were all over they would have a written agreement; that they anticipated this all the way through the transaction; and that no signed lease agreement was ever received from Premier. Bates' testimony concerning his telephone conversation with Ferrell, which is particularly relied upon by appellee, likewise fails to show that Ferrell intended for Premier to enter into an oral lease contract. Bates testified that Ferrell indicated that the terms of the lease were all right, but he did not say that Ferrell stated his intention to enter into an oral contract. What Bates testified in this connection was that Ferrell said he would make an immaterial correction in the writing and would then return to Bates his copy. This testimony is not consistent with the conclusion that Ferrell had abandoned his intention that any lease contract between the parties should be in writing, and that he thereby indicated an intention to enter into an oral lease contract. In our opinion, Bates' testimony concerning the intention of Ferrell that

any lease contract on the premises should be in writing must be construed as binding upon him. Southern Surety Company v. Inabnit, Tex.Civ.App., 1 S.W.2d 412.

In support of the contention that the parties hereto consummated an oral lease contract appellee Bates also urges his testimony and that of Sears concerning Sears' payment of rent and entering into possession of the premises, and of the dealings and conversations between him and Sears about the matter. Sears was not an agent or representative of Premier and Premier was not bound by any conversations or deals between him and Bates. Sears did not testify that Ferrell ever told him that Premier had leased the premises or that Premier had subleased the premises to him. Neither did Bates testify that Ferrell ever told him that Premier had subleased the premises to Sears. The action of Sears in entering upon the premises and paying rent is likewise not binding upon Premier in the absence of some showing that Premier authorized such action by Sears.

In summary, the evidence is conclusive that Bates and Premier both intended to consummate their negotiations with a written lease. Bates himself so testified. Bates prepared a written lease which showed a space for both parties to sign and acknowledged same and sent it to Ferrell. Bates testified although it is disputed that he did sign and acknowledge the copies of the proposed lease sent to Ferrell and requested Ferrell to have a copy of the lease signed and returned to him. It is undisputed that the writing was not signed by Premier and returned to Bates and there is no evidence that Premier ever intended to be bound in the absence of the contemplated written agreement. Appellant's point in effect that the court erred in entering judgment for Bates on the basis of an oral contract because the undisputed evidence shows that the parties intended to finalize their negotiations with an executed and delivered written lease contract and that no such contract was ever executed and entered into

is well taken and is sustained. Our determination of this point requires that the judgment be reversed and rendered for appellant. It is therefore unnecessary to discuss other points presented.

The judgment is reversed and judgment is here rendered for appellant.