Doye BAKER, Appellant,

v.

Daymon Ray HOWARD, Appellee.

No. 10–89–164–CV.

Court of Appeals of Texas,
Waco.

Oct. 25, 1990.

Gary J. Coker, Jr., Waco, for appellant.

James O. Terrell and Beverly A. Crowden, Terrell & Crowden, P.C., Waco, for appellee.

HALL, Justice.

In January and February 1987, appellant Doye Baker loaned appellee Daymon Howard $55,000.00 with four advances of funds that ended on February 18th. Baker agreed to finance the loan over a period of seven years, at fifteen percent interest per annum, with monthly payments of

1. Vernon's Annotated Texas Civil Statutes.

$1,061.32 beginning March 1, 1987. The loan agreement between the parties was oral, and it was completed on February 18th. Baker testified that on that day, "When we were discussing it, [Howard] asked me what his payments would be on the $55,000.00 at the 15 percent interest, and I did have an amortization book and we looked it up in an amortization book, and that is where we came up with a figure of $1,061.00, whatever it is." Appellee did not execute a promissory note or any other instrument evidencing the loan. However, between February 18th and March 1st, after the terms of the loan had been agreed upon, appellant gave appellee a printed amortization schedule setting forth the amount of the loan, the rate of interest, and the 84 payments of $1,061.32 each required under the original agreement. After appellee had made eight payments and a part of the ninth, he quit paying on the loan. This lawsuit was filed in May 1988 and tried to a jury in April 1989. The jury found that the transaction between the parties was a loan. The judgment that followed in the case awarded appellant the balance due on the note less the penalty for usurious interest set forth in Texas Civil Statutes Article 5069–1.06(1) on the trial court's conclusion that the interest charged on the loan was usurious as a matter of law under the provisions of Articles 5069–1.02 and 5069–1.04 of the Texas Civil Statutes because the interest exceeded ten percent and the loan contract was not in writing.

These statutes[1] provide in pertinent parts as follows:

**Art. 5069–1.02.**

Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article [5069–1.06].

**Art. 5069–1.04.**

(a) The parties to any written contract may agree to and stipulate for any rate of interest, ... that does not exceed:

(1) an indicated rate ceiling that is the auction average rate quoted on a bank discount basis for 26–week treasury bills issued by the United States government, as published by the Federal Reserve Board, for the week preceding the week in which the rate is contracted for, multiplied by two, and rounded to the nearest one quarter of one percent; or, as an alternative,

(2) an annualized or quarterly ceiling that is the average of the computations under Subsection (1) of this section and is computed pursuant to Section (d) of this Article.

(b)(1) If a computation under Section (a)(1), (a)(2), or (c) of this Article is less than 18 percent a year, the ceiling under that provision is 18 percent a year. If a computation under Section (a)(1), (a)(2), or (c) of this Article is more than 24 percent a year, the ceiling under that provision is 24 percent a year.

**Art. 5069–1.06. Penalties**

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; ....

The amortization schedule that appellant gave to appellee set forth near the top of the first page, "Loan Amount $55,000.00"; "Interest Rate 15.0000%"; "First Payment Due 03/01/87"; and "Payment Amount $1061.32." This was followed by the listing of 84 numbered payments of $1,061.32 each with columns showing the payment due dates, the amount of interest and principal included in each payment, and the balance remaining on the principal of the loan after the payment. However, the schedule was not signed by either party and contained no identifying information as to the parties to be bound.

 In his single point of error appellant urges on appeal as he did in the trial court that the amortization schedule, which set forth the loan agreement of the parties, including the fifteen percent interest rate, satisfied the requirement in Article 5069–1.04(a) for a "written contract" that permits an agreement for a rate of interest above ten percent that is not usurious. We disagree. The question of whether or not the unsigned amortization schedule was the written contract of the parties or merely a memorial of the prior oral agreement of the loan transaction was a fact issue for the jury, turning on the intent of the parties. *Simmons And Simmons Construction Co. v. REA,* 155 Tex. 353, 286 S.W.2d 415 (1955). This fact issue was not submitted to the jury in our case. The judgment carries the implied finding of the trial court that the schedule was not the written agreement of the parties. Rule 279, Vernon's Tex.Rules Civ.Proc. Evidence we have recited supports this finding, showing that the loan agreement was entirely completed, including the amount of the monthly payments, several weeks before the schedule was supplied to Howard by Baker. Additionally, the schedule was not sued on or pleaded by either party. Under the evidence, the trial court was justified in determining that the parties merely intended and used the amortization schedule as evidence of the prior completed oral contract of the loan transaction upon which they acted. As mere evidence of the oral contract, the schedule was not a "written con-

tract" within the meaning of Article 5069–1.04(a).

 The maximum legal rate of interest that the parties could have agreed upon orally for the loan in question was ten percent per annum. Article 5069–1.02, ante. Because the fifteen percent rate agreed upon and used by the parties was not "in excess of double the amount of [legal] interest," the proper penalty to be assessed against appellant, and the one used by the trial court, was the requirement that appellant forfeit to appellee "three times ... the amount the total interest contracted for ... exceed[ed] the amount of interest allowed by law," plus attorney's fees. Article 5069–1.06, ante.

 The total amount of interest at fifteen percent per annum that was charged on the loan of $55,000.00 was $34,151.13. This was based upon a loan period of seven years that called for monthly payments of $1,061.32 each. In computing the penalty, the trial court assumed a loan of $55,000.00 bearing interest at ten percent per annum for a term of seven years. This assumption called for 84 monthly payments of $916.06, and it produced a total interest charge of $21,697.14. Thus, by subtracting $21,697.14 from $34,151.13, the court determined that the amount of usurious interest was $12,453.49 and used this figure in calculating the penalty to be assessed against appellant.

In his single crosspoint on appeal, appellee contends that since the evidence conclusively established that the monthly payments agreed to and paid by him were $1,061.32 each, the trial court should have determined the amount of interest that would have been charged on a loan of $55,000.00 bearing interest at ten percent per annum and being repaid in monthly installments of $1,061.32 each. This would have called for repayment of the loan in sixty-eight payments, producing a total interest charge of $17,305.13. Thus, under appellee's argument, the usurious interest charged by appellant was $16,806.00 ($34,-151.13 less $17,305.13). We disagree with appellee.

The undisputed evidence shows that the loan agreement made by appellee and appellant centered upon the amount of the loan ($55,000.00), the term of the loan (seven years), and the interest rate (finally settled at fifteen percent). Appellee testified that he agreed that he would "repay that $55,000.00" with "monthly payments, seven years," that he would pay interest, that he did not know the interest would be "fifteen percent until [appellant] brought me the amortization," and that he "agreed to pay him fifteen percent." Appellant testified, "I would finance the $55,000.00 to him over a period of, I believe it was seven years, at fifteen percent interest."

Appellee centers his method for computing the usurious interest on the amount of the monthly payment. However, the parties' agreement was not built on this payment. The amount of the payment merely resulted from the amortization of the loan agreement that centered on the amount of the loan, the term and rate. We agree with the trial court that the proper method for determining the amount of usurious interest charged is to substitute the legal rate of interest for the usurious rate in the loan agreement made by the parties.

The parties' points and contentions are overruled.

The judgment is affirmed.

THOMAS, Chief Justice, dissenting.

Baker and Howard both agreed that Baker loaned Howard $55,000 at 15% interest, which was to be repaid in 84 equal monthly installments of $1,061.32 each. The loan was made without a note or any security agreement being executed by Howard. Shortly after the loan was made and before Howard made his first payment, Baker delivered to Howard a computer-printed amortization schedule with the following at the top of the schedule:

| | |
|---|---|
| LOAN AMOUNT | $55,000.00 |
| INTEREST RATE | 15.000% |
| FIRST PAYMENT DUE | 03/01/87 |
| PAYMENT AMOUNT | $1,061.32 |

Below this information were six columns for the following data:

| DUE DATE | PAYMENT NUMBER | AMOUNT OF PAYMENT | PAYMENT ON INTEREST | PAYMENT ON PRINCIPAL | BAL. DUE |
|---|---|---|---|---|---|
| 3/01/87 | 1 | 1,061.32 | 687.50 | 373.82 | 54,626.18 |
| 4/01/87 | 2 | 1,061.32 | 682.83 | 378.49 | 54,247.69 |
| | | * | * * | | |
| 2/10/94 | 84 | 1,061.54 | 13.11 | 1,048.44 | 0.00 |

Howard admitted that he agreed to the 15% interest rate and that the amortization schedule correctly set out the terms of the loan. After making seven monthly payments in accordance with the schedule, which he noted by circling the payment number in the second column, Howard made the eighth payment by giving Baker a "hot tub" in lieu of cash. He then refused to make any further payments.

Howard sued Baker to set aside two deeds which he executed to Baker in connection with the transaction, claiming the deeds were really unconstitutional mortgages on his business and residential homesteads to secure the loan. Baker said that he agreed to reconvey the property back to Howard after the loan was fully repaid in accordance with their agreement. In any event, Baker filed a cross-action against Howard for the unpaid balance of the loan. Howard admitted that he owed Baker the unpaid balance on the loan, but alleged in a trial amendment that the 15% interest rate on the loan was usurious because there was no "written contract" between the parties within the meaning of article 5069–1.-04(a). *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.04(a) (Vernon 1987).

Based on a jury finding that the transaction between the parties was a loan, the court entered a judgment canceling the deeds on Howard's homesteads, awarding Baker a recovery on the unpaid balance of the loan after deducting a usury penalty authorized by article 5069–1.06(1), and awarding Howard attorney's fees. *See id.* at art. 5069–1.06(1). In its judgment the court concluded that the loan was usurious as a matter of law and, in a separate legal conclusion, held that there was no written contract between the parties within the meaning of article 5069–1.04(a).

Baker's principal point on appeal is that the court erred when it concluded that the interest rate was usurious because the amortization schedule qualified as a written contract under article 5069–1.04(a) as a matter of law. The majority rejects this argument with the following comment:

> The question of whether or not the unsigned amortization schedule was the written contract of the parties or merely a memorial of the prior oral agreement of the loan transaction was a fact issue for the jury, turning on the intent of the parties. *Simmons And Simmons Construction Co. v. REA*, 155 Tex. 353, 286 S.W.2d 415 (1955). This fact issue was not submitted to the jury in our case. The judgment carries the implied finding of the trial court that the schedule was not the written agreement of the parties. Rule 279, Vernon's Tex.Rules Civ.Proc. Evidence we have recited supports this finding, showing that the loan agreement was entirely completed, including the amount of the monthly payments, several weeks before the schedule was supplied to Howard by Baker. Additionally,

the schedule was not sued on or pleaded by either party. Under the evidence, the trial court was justified in determining that the parties merely intended and used the amortization schedule as evidence of the prior completed oral contract of the loan transaction upon which they acted. As mere evidence of the oral contract, the schedule was not a "written contract" within the meaning of Article 5069–1.04(a).

I respectfully dissent to this portion of the opinion.

Whether a contract exists between parties is a fact issue if there is a dispute over their intent. *See Foreca, S.A. v. GRD Development Co., Inc.,* 758 S.W.2d 744, 746 (Tex.1988); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 557 (Tex.1972) [1]. However, the court decides the issue as a question of law when evidence of intent is undisputed. *See Foreca,* 758 S.W.2d at 746; *Rea,* 286 S.W.2d at 419; *Henry C. Beck Company v. Arcrete, Inc.,* 515 S.W.2d 712, 716 (Tex.Civ.App.—Dallas 1974, writ dism'd). In fact, any reliance on *Rea* is misplaced if it is cited as authority for holding that the jury could have decided whether the parties intended the amortization schedule to be a written contract. There, the court decided the question as a matter of law because there was no dispute over the parties' intent. *See Rea,* 286 S.W.2d at 419. Here, Baker's and Howard's intent was never in dispute, and the question of whether the amortization schedule was a written contract was for the court to determine as a matter of law.

This quote from *Rea* clearly sets forth the applicable law: "The following observations by Professor Corbin in his work on contracts are pertinent: ... *An unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract." Id.* at 418 (emphasis added).

Under this rule and the facts presented, two essential questions arise: (1) whether the unsigned amortization schedule embodied all of the terms of the loan; and (2) whether the parties unconditionally assented to the terms of the loan. If the evidence conclusively established the affirmative of these questions, then the amortization schedule was a written contract as a matter of law.

Baker and Howard both admitted that the unsigned amortization schedule embodied all of the terms of the loan.[2] Likewise, the evidence conclusively established that Howard and Baker unconditionally assented to the terms of the loan. There simply was no evidence to support a contrary conclusion or to raise a fact issue on either question. Thus, the amortization schedule was a written contract as a matter of law, and failing to expressly plead it as such did not make it otherwise. *See id.*

There was nothing for the jury to determine with respect to what the parties intended because their intent was never a disputed issue. Furthermore, an issue can be deemed found under Rule 279 only if "there is factually sufficient evidence to support a finding thereon." TEX.R.CIV.P. 279. There was no evidence to support a deemed finding that the parties intended the schedule not to be a written contract. In fact, the evidence conclusively established the contrary.

Article 5069–1.04(a) provides that parties to any "written contract" may agree to a rate of interest not exceeding 18%. TEX. REV.CIV.STAT.ANN. art. 5069–1.04(a), (b)(1) (Vernon 1987). Based on the undisputed evidence, the amortization schedule was a "written contract" within the mean-

---

1. There was conflicting evidence in *Foreca* and *Scott* on whether the parties intended to be immediately bound by their agreement or intended their agreement to have no significance until it was reduced to writing and signed. *Foreca, S.A. v. GRD Development Co., Inc.,* 758 S.W.2d 744, 746 (Tex.1988); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 555 (Tex.1972).

2. That the schedule was not signed by the parties did not prevent it from being a written contract. *See Simmons and Simmons Construction Co. v. Rea,* 155 Tex. 353, 286 S.W.2d 415, 418 (1955). Moreover, the record contains no evidence that Baker or Howard ever conditioned their assent to the terms of the loan upon their signatures being affixed to any written instrument. *See id.*

ing of article 5069–1.04(a) as a matter of law, and the 15% interest rate was thus not usurious.

Consequently, I would hold that the court erred when it ruled that the loan was usurious and would sustain Baker's first point. Under my view of the proper disposition, the second point is never reached. Furthermore, I would reverse the portions of the judgment deducting the usury penalty from the amount due Baker on the loan and awarding Howard attorney's fees, and then reform and affirm the judgment in Baker's favor for the amount due on the loan and attorney's fees.