

# NUMBERS 13-12-00564-CV AND 13-12-00620-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DISH NETWORK L.L.C.,                                                        Appellant,

v.

JAMES BRENNER,                                                              Appellee.

## On appeal from the County Court at Law No. 7
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Rodriguez**

This is an interlocutory appeal from the trial court's order denying the motion to

compel arbitration filed by appellant DISH Network L.L.C. (DISH Network).  *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2011) (enacting a law authorizing

interlocutory appeals under the Federal Arbitration Act (FAA) in Texas courts). By a single issue, DISH Network contends that the trial court abused its discretion when it refused to compel arbitration. We reverse and remand.

## I. BACKGROUND

On August 15, 2005, DISH Network hired appellee James Brenner to work as a customer service representative. That same day, Brenner signed a document that was titled Mandatory Arbitration of Disputes—Waiver of Rights Agreement (Arbitration Agreement). The August 15 Arbitration Agreement, which was on EchoStar letterhead, was between James Brenner and "EchoStar Communications Corporation and all of its affiliates (the term 'affiliates' means companies controlling, controlled by[,] or under common control with, EchoStar Communications Corporation) (EchoStar Communications Corporation and its affiliates are individually and collectively referred to herein as 'EchoStar')." Erin Adame, who worked in DISH Network's Human Resources Department, averred in her affidavit attached to DISH Network's motion to compel arbitration that "DISH Network is controlled by or under common control with DISH Network Corporation (f/k/a EchoStar Communications Corporation) and is considered an affiliate, as are the other named entities, Echosphere L.L.C., and DISH Network Service L.L.C."

The Arbitration Agreement states, in relevant part, the following:

> This [Arbitration Agreement] made [August 15, 2005], is between EchoStar Communications Corporation and all of its affiliates (the term "affiliates" means companies controlling, controlled by or under common control with, EchoStar Communications Corporation) (EchoStar Communications Corporation and its affiliates are individually and collectively referred to herein as "EchoStar") and <u>James Brenner</u>

("Employee"). In consideration of the Employee's employment by EchoStar (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee and EchoStar agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration. The Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and is fully enforceable.

Brenner signed the Arbitration Agreement; DISH Network did not.

On June 27, 2011, Brenner filed this employment discrimination suit under the Texas Commission on Human Rights Act (TCHRA). Brenner claimed that DISH Network terminated his employment because of his race and color. DISH Network filed a motion to compel arbitration, arguing, among other things, that: (1) under the FAA, a valid and enforceable arbitration agreement existed; and (2) Brenner's claims fell within the scope of the Arbitration Agreement. Brenner responded that the Arbitration Agreement was not valid because: (1) it was illusory because DISH Network retained the unilateral right to change its terms; (2) it was indefinite because of its alleged right to modify or revoke the Arbitration Agreement; and (3) it barred class or collective actions "[i]n the event that [the American Arbitration Association (AAA)] rules prevent collective or class action arbitrations." On August 22, 2012, after hearing the parties' arguments on DISH Network's arbitration motion, the trial court orally granted the motion to compel arbitration. However, before the hearing ended, the trial court sua sponte raised the issue of whether both parties signed the Arbitration Agreement. It is undisputed that Brenner signed the Arbitration Agreement, and counsel for DISH Network agreed, at the hearing, that his client did not. After receiving this information, the trial court reasoned

3

that, in its opinion, "there was never a meeting of the minds," and instead of ordering arbitration, the trial court stated that it was "going to order this [case] to mediation."

Without providing a basis for its ruling, the trial court generally denied DISH Network's motion to arbitrate by an August 27, 2012 written order and by a subsequent written order dated September 12, 2012. The September order appears duplicative of the August order. Out of an abundance of caution, DISH Network filed two notices of appeal, one from each of the orders. This Court assigned separate cause numbers and later consolidated the appeals for purposes of the record and briefing. We will now address the appeals in one opinion.

## II. Capacity

Brenner first challenges DISH Network's capacity to seek arbitration, which he describes as a form of affirmative relief. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 847 (Tex. 2005) (citing *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (explaining that a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy)). Relying on section 171.253 of the Texas Tax Code, Brenner asserts that because DISH Network "has not satisfied all franchise tax requirements," it "cannot affirmatively seek to enforce its arbitration clause in this [C]ourt as its corporate formalities have not been maintained and its ability to function as a corporation appeared to have been forfeited and these privileges are not in good standing." *See* TEX. TAX CODE ANN. § 171.253 (West 2008 ) ("In a suit against a corporation on a cause of action arising before the forfeiture of the corporate privileges of the corporation, affirmative relief may

4

not be granted to the corporation unless its corporate privileges are revived under this chapter.").

In support of its argument, Brenner relies on a January 26, 2013 DISH Network Certificate of Account Status from the Texas Comptroller of Public Accounts, which sets out that DISH Network "is not in good standing as it has not satisfied all franchise tax requirements." In response, DISH Network contends that its corporate privileges are not forfeited as evidenced by a copy of a February 20, 2013 Certificate of Account Status from the Texas Comptroller, which confirms that DISH Network "is in good standing" with the Texas Comptroller "having no franchise tax reports or payments due at this time."

In this circumstance, the facts in the certificates of account status are relevant; therefore, it is appropriate for us to take judicial notice of the certificates from the Texas Comptroller, and we will do so. *See SEI Bus. Sys., Inc. v. Bank One Tex., N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ) ("As a general rule, appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law . . . ."); *see also Freedom Communs., Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (per curiam) (concluding that because facts in a plea agreement were relevant, it was appropriate to take judicial notice of them). Also, once a corporation revives its corporate privileges through the payment of any delinquent taxes or filing of any delinquent reports, the corporation's good standing and corporate privileges relate back and permit it to defend itself and seek affirmative relief in Texas courts. *See Bluebonnet Farms, Inc. v. Gibraltar Sav. Ass'n*, 618 S.W.2d 81, 85 (Tex. App.—Houston [1st Dist.]

1980, writ ref'd n.r.e.); *see also* TEX. TAX CODE ANN. § 171.253.

Assuming without deciding that Brenner has not waived this capacity issue, *see* TEX. R. CIV. P. 93(2) (requiring a party to file a verified pleading if he contends that the plaintiff lacks the capacity to sue unless the truth of such matter appears of record), because the most current certificate before this Court establishes that DISH Network is in good standing with the Texas Comptroller, we conclude that it has the capacity to seek arbitration. Brenner's contention based on forfeiture of corporate privileges is moot. We overrule this capacity issue.

### III. THE ARBITRATION AGREEMENT

### A. Standard of Review and Applicable Law

In general, we review a trial court's denial of a motion to compel arbitration under an abuse of discretion standard. *In re Labatt Food Serv.*, 279 S.W.3d 640, 642–43 (Tex. 2009). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under this abuse of discretion standard, we defer to the trial court on factual determinations, but review legal issues de novo. *In re Labatt Food Serv.*, 279 S.W.3d at 642–43. Whether an agreement imposes a duty on the parties to arbitrate a dispute is a legal question that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

"In evaluating a motion to compel arbitration, a court must determine first whether a valid arbitration agreement exists, and then whether the agreement encompasses the

6

claims raised." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781; *see In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). The party moving to compel arbitration bears the burden to show a valid agreement to arbitrate. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Once a party establishes the existence of an arbitration agreement and that the claim falls within the scope of the arbitration agreement, the trial court must compel arbitration and stay its own proceedings unless the party opposing arbitration proves a defense precluding enforcement. *In re C & H News Co.*, 133 S.W.3d 642, 645 (Tex. App.—Corpus Christi 2003, orig. proceeding).

## B. The Validity of the Arbitration Agreement

By its sole issue, DISH Network contends that the trial court abused its discretion when it denied DISH Network's request for arbitration because: (1) DISH Network established the existence of a valid arbitration agreement signed by Brenner; (2) DISH Network's signature was not required to establish a valid agreement to arbitrate; (3) the agreement is not illusory; (4) it does not lack consideration; (5) it is not indefinite; (6) it does not bar class or collective actions; and (7) it did not expire upon Brenner's termination.

### 1. Did DISH Network satisfy its burden to show a valid agreement to arbitrate?

DISH Network first contends that it met its burden of establishing that there was a valid agreement to arbitrate. *See J.M. Davidson, Inc.,* 128 S.W.3d at 227. DISH Network presented the trial court with a copy of the Arbitration Agreement, authenticated by the affidavit of DISH Network's Human Resources Representative, Erin Adame. *See In re Jim Walters Homes*, 207 S.W.3d 888, 897 (Tex. App.—Houston [1st Dist.] 2006,

7

orig. proceeding) (finding that the submission of an authenticated copy of the agreement containing the arbitration clause satisfied the movant's initial burden); *Wachovia Sec. LLC v.* Emery, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (same); *In re Consenco Fin. Serv. Corp.*, 19 S.W.3d 562, 569 (Tex. App.—Waco 2000, orig. proceeding) (holding that a copy of the arbitration agreement attached to the motion to compel established the existence of an agreement to arbitrate). Brenner's signature appears on the Arbitration Agreement, which is evidence that he agreed to arbitrate any claims or disputes that arose out of his employment with DISH Network. *See In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 876 (Tex. App.—El Paso 2005, orig. proceeding) ("A party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms."); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, orig. proceeding) (same). The Arbitration Agreement also provided "that any claim, controversy and/or dispute between [the parties], arising out of and/or in any way related to [Brenner's] application for employment, employment and/or termination of employment" would be "resolved by arbitration."

Based on the above, we conclude that DISH Network's submission of the authenticated Arbitration Agreement signed by Brenner satisfied DISH Network's burden of showing the existence of an arbitration agreement that governs Brenner's termination claims. If the trial court denied DISH Network's motion to compel arbitration on the basis that DISH Network had not established its initial burden, it abused its discretion. *In re Labatt Food Serv.*, 279 S.W.3d at 642–43; *see Downer*, 701 S.W.2d at 241–42.

Having concluded that DISH Network met its burden, Brenner, the party opposing

8

arbitration, must have established a ground, which would preclude enforcement of the Arbitration Agreement. *See In re C & H News Co.*, 133 S.W.3d at 645. Our review of the grounds asserted in the trial court follows.

### 2. Was DISH Network's signature required?

The trial court denied DISH Network's motion to arbitrate, at least in part, on the basis that DISH Network's signature did not appear on the Arbitration Agreement. Yet a signature is not required to prove a party's acceptance of an arbitration agreement under the FAA. *See In re Macy's Tex., Inc.*, 291 S.W.3d 418, 418 (Tex. 2009) (orig. proceeding) (per curiam) ("[T]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."); *In re Advance PCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) (per curiam) ("But neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties."); *see also Paramount Rehab & Health/PHCC v. Matthews*, No. 04-10-00194-CV, 2010 Tex. App. LEXIS 5935, at *7–8 (Tex. App.—San Antonio July 28, 2010, no pet.) (mem. op.) (reasoning that, because the FAA does not require an arbitration agreement to be signed by the parties, "[t]he absence of [the defendant employer's] signature from the arbitration documents is thus inconsequential"); *In re Brown & Root, Inc.*, No. 05-98-00689-CV, 1998 Tex. App. LEXIS 3676, at *3 (Tex. App.—Dallas June 18, 1998, orig. proceeding) (op. and order) (noting that the defendant employer's signature is immaterial because "[t]he FAA does not require the arbitration agreement be signed, just that it be in writing") (citing 9 U.S.C. § 2 (1970)); *Valero Ref., Inc. v. MT Lauberhorn*, 813 F.2d 60, 64 (5th Cir.

9

1987); *Shearson Lehman v. McKay*, 763 S.W.2d 934, 937 (Tex. App.—San Antonio 1989, no writ.)). In addition, a non-signing party may be bound to a written arbitration agreement if that party intended to be bound by the agreement. *See In re Bunzl, USA, Inc.*, 155 S.W.3d at 209; *see also Brown & Root*, 1998 Tex. App. LEXIS at *3–4 (setting aside the lack of a signature, the defendant employer "clearly agreed to be bound by the arbitration agreement").

The undisputed evidence establishes that DISH Network intended to be bound by the Arbitration Agreement. As in *Brown & Root*, DISH Network drafted the Arbitration Agreement, which set out that Brenner and EchoStar (now DISH Network) agreed, among other things, that any claim arising out of Brenner's termination would be resolved by arbitration. *See* 1998 Tex. App. LEXIS at *4. The agreement specifically set out that the company agreed to resolve Brenner's termination claim through arbitration. *See id*. DISH Network required all employees to sign the Arbitration Agreement prior to working at the company. *See id.* The Arbitration Agreement was printed on EchoStar's letterhead. Finally, DISH Network, through its motion, requested that the agreement be enforced. *See id.*

Reviewing this question de novo, we conclude that the trial court erred if it denied DISH Network's motion to compel arbitration on the basis that it did not sign the Arbitration Agreement and, thus, the agreement was not valid. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 781; *J.M. Davidson, Inc.*, 128 S.W.3d at 227. The evidence before the trial court established that DISH Network, the non-signing party, assented to the terms of the Arbitration Agreement. Therefore, acting without reference to any

guiding rules or principles, the trial court abused its discretion if it denied DISH Network's motion to compel arbitration in this regard. *See Downer*, 701 S.W.2d at 241–42.

### 3. Is the Arbitration Agreement illusory?

Brenner argued to the trial court that the Arbitration Agreement was not valid because it was illusory. DISH Network contends that this argument fails because there is no language in the Arbitration Agreement that gives DISH Network a unilateral right to change or revoke the agreement to arbitrate—language which would arguably make the agreement illusory. *See In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) (holding that an arbitration agreement is not illusory if it does not contain any provisions that permit one party to unilaterally modify or rescind the arbitration agreement). We agree that the Arbitration Agreement contains no such language, and Brenner does not complain about any of the Arbitration Agreement's provisions, or lack thereof.

Instead, Brenner argues that the Arbitration Agreement is illusory because DISH Network did not sign the document, and, by not signing the document, DISH Network reserved for itself the same flexibility as the general contractor in *Simmons & Simmons Construction Company v. W.L. Rea d.b.a. W.L. Rea Construction Company*. *See* 155 Tex. 353, 358, 286 S.W.2d 415, 418 (Tex. 1955). Relying on *Rea*, Brenner reasons as follows: because DISH Network did not sign the Arbitration Agreement, if it chose to enforce the Arbitration Agreement, it could "feign that its agreement was implicit"; but, if it desired to avoid an arbitration, "it need only to invoke the *Rea* case as proof that no binding agreement was formed due to its failure or refusal to indicate its assent on the

document's face."  *See id.*

*Rea*, however, is distinguishable.  *Rea* involved a breach of contract claim brought by a subcontractor against a contractor.  *See* 155 Tex. at 354–55, 286 S.W.2d at 416.  As in this case, one of the parties, the contractor, did not sign the document, although the contract, unlike the Arbitration Agreement, provided a place for its signature. *See id.*  However, unlike the present case, the *Rea* Court concluded, in part, that the contractor did not accept the contract after the sub-contractor signed it.  *See* 155 Tex. at 359, 286 S.W.2d at 419.

We have already concluded that the evidence in this case established that DISH Network, the non-signing party, assented to the terms of the Arbitration Agreement—that it intended to be bound by the agreement, even absent its signature.  So Brenner's reliance on *Rea* is misplaced.  He provides no other authority to support his contention that the Arbitration Agreement is illusory because it was not signed by DISH Network, and we find none.  We, therefore, conclude that the trial court abused its discretion if it considered this argument as a basis for its denial of DISH Network's motion to compel arbitration.

### 4. Does the Arbitration Agreement lack consideration?

DISH Network also notes that, in his opposition and response to DISH Network's motion to compel arbitration filed in the trial court, Brenner conflated his argument that the Arbitration Agreement is illusory with his argument that the Arbitration Agreement lacks consideration.  Regarding any lack-of-consideration argument, it is well-settled in Texas that "[a] mutual agreement to arbitrate claims provides sufficient consideration for an

12

arbitration agreement." *Sun Fab Indus. Contracting Inc. v. Lujan,* 361 S.W.3d 147, 152 (Tex. App.—El Paso 2011, no pet.) (citing *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per curiam)); *see In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 767 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (holding arbitration agreement was supported by consideration where "the parties' agreement created mutual promises by both to forego their right to a jury trial"); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579–80 (Tex. App.—San Antonio 2000, orig. proceeding) ("Since the parties surrendered their rights to trial by jury, these mutual promises supply valid consideration.").

In this case, the Arbitration Agreement specifies the following:   "the Employee and EchoStar agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration."   This mutual agreement to arbitrate is valid consideration.   Brenner's argument, if any, that the Arbitration Agreement is not valid because it lacks consideration is not supported by the record or by authority.   Again, the trial court abused its discretion if it considered this argument as a basis for its denial of the motion to compel arbitration.

### 5. Is the Arbitration Agreement indefinite?

Brenner also argued in his trial court opposition papers that the Arbitration Agreement is not enforceable because it fails for indefiniteness, an argument again premised on DISH Network's alleged retention of the right to modify or revoke the Arbitration Agreement.   Brenner claims that "[t]he ultimate problem occasioned by DISH

13

Network's implicit reservation of rights is that it retains unfettered discretion to change any aspect of the 'agreement,'" a right that from the beginning renders every aspect inherently indefinite. We have already determined that there is no evidence that the Arbitration Agreement is subject to change by DISH Network; therefore, Brenner's premise for this argument fails. And the trial court abused its discretion if it considered this as a basis for its denial of DISH Network's motion to compel arbitration.

**6.    Does the Arbitration Agreement bar class or collective actions?**

Brenner also argued to the trial court that the Arbitration Agreement is invalid because it purportedly bars class and collective actions. Brenner generally relies on the AAA Employment Arbitration Rules. Yet Brenner does not refer us to any specific provision of the AAA's Rule that supports his argument, and we find none. Brenner also acknowledges that his case does not involve a collective or class action and is a single plaintiff discrimination case, making this argument premature. So the trial court abused its discretion if it considered this as a basis for its denial of the motion to compel arbitration.

**7.    Did the Arbitration Agreement expire upon Brenner's termination?**

Brenner also claimed in the trial court that the Arbitration Agreement expired upon his termination because it was a covenant within a larger employment agreement. We disagree. Assuming without deciding that the Arbitration Agreement in this case was such a covenant, Texas law provides that an arbitration agreement survives termination of employment, even absent a savings clause. *See Cleveland Const., Inc. v. Levco Const., Inc.*, 359 S.W.3d 843, 854 (Tex. App.—Houston [1st Dist.] pet. dism'd) (holding

14

that "a savings clause was not required for the arbitration provision . . . to survive any termination"); *see also Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd) ("[A]n arbitration agreement contained within a contract survives the termination of the contract as a whole.").   In addition, the Arbitration Agreement survived Brenner's termination by its specific agreement to arbitrate any claim related to his "employment and/or termination of employment, whenever and wherever brought."   To the extent the trial court relied on this claim as a basis for its denial of the motion to arbitrate, we conclude that it abused its discretion.

## C.     Scope of the Agreement

In his response brief on appeal, Brenner challenges the scope of the Arbitration Agreement.   He argues that its scope involves claims "between Brenner and EchoStar Communications Corporation and its affiliates" and not claims between Brenner and his now existing employer, DISH Network, LLC.   Brenner contends that because DISH Network is a distinct corporate form from EchoStar, it is not an affiliate of EchoStar under the terms of the Arbitration Agreement, and therefore, the claims in this case fall outside the scope of the Arbitration Agreement.

But the Arbitration Agreement does provide that it is between Brenner and "EchoStar Communications Corporation and all of its affiliates (the term 'affiliates' means companies controlling, controlled by or under common control with, EchoStar Communications Corporation)."   Through DISH Network's supporting affidavit, Adame averred "DISH Network is controlled by or under common control with DISH Network Corporation (f/k/a EchoStar Communications Corporation) and is considered an affiliate,

15

as are the other named entities, Echosphere L.L.C., and DISH Network Service L.L.C."
Brenner does not challenge this portion of Adame's affidavit.

Because we must resolve any doubts about an arbitration agreement's scope in favor of arbitration, we conclude that Brenner's claims against DISH Network, L.L.C. fall within the scope of the Arbitration Agreement. *See In re FirstMerit Bank*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). The trial court abused its discretion if it denied DISH Network's motion to compel arbitration on this basis.

**D.    Summary**

Having concluded that DISH Network established the existence of an arbitration agreement and that the claim falls within the scope of the agreement, and that Brenner did not successfully challenge the Arbitration Agreement by proving a ground or defense precluding its enforcement, *see In re C & H News Co.*, 133 S.W.3d at 645, we sustain DISH Network's sole issue.

## IV. CONCLUSION

We reverse the order denying DISH Network's motion to compel arbitration and motion to abate the proceedings pending arbitration and remand to the trial court to enter an order consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
27th day of June, 2013.

16